## No. 13,024.

### R. L. CROOK & Co. vs. THE TENSAS BASIN LEVEE DISTRICT.

#### SYLLABUS.

Relying upon custom and usage in the matter of levee building, to the effect that the contractor is entitled to claim extra compensation for stumpage and clearing, outside of, and in addition to the calls of the written agreement, plaintiff has no cause of action on that score, if the agreement stipulates that no such claim shall be allowed or paid.

Having accepted such a contract, and acted on it and performed the work and received the stipulated compensation therefor, he can not plead duress in avoidance of such stipulation, in order to make way to recover such extra compensation by virtue of a parol agreement with the president of the levee board.

ON APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. *Potts, J.*

*Wade R. Young* for Plaintiff and Appellant.

*E. T. Lamkin* for Defendant and Appellee.

Argued and submitted January 30, 1899.
Opinion handed down February 6, 1899.

The opinion of the court was delivered by

WATKINS, J.. On exception of the defendant, this suit was dismissed by the judge *a quo,* for the reason that, in his opinion, plaintiff's petition disclosed no cause of action; and from the judgment of dismissal, the plaintiff prosecutes this appeal.

The question, then, for the determination of this court is, whether the averments of the petition, taken as true, are sufficient to predicate a judgment upon.

The plaintiff's petition is reproduced in full in the brief of defendant's counsel, and as a matter of convenience, we have made therefrom the following extracts, viz.:

Plaintiff claims of the defendant the sum of two thousand three hundred dollars for this, viz.:

"The petition of R. L. Crook & Co., a sole trader, residing in the county of Warren, and state of Mississippi, respectfully shows that the Tensas Basin Levee District, a corporation chartered by the laws of the state, represented by the board of levee commissioners of the Tensas Basin Levee District, and by John P. Parker, president, and having its domicile in your said parish, is legally and justly indebted unto your petitioner in the just and full sum of two thousand, three hundred dollars, with legal interest from January 1st, 1895, for this, to-wit:

"That A. P. Martin, the assignor of petitioner, was and had been for many years, a levee contractor in this state, and as such had taken and executed faithfully many contracts for the construction of levees, from the state, and the several levee districts, including this one, and that in all such contracts it had always been implied and understood, that extra compensation would be paid for the work of stumpage and clearing, and bids had always been made for the work upon such understanding, and that before the grievance of which he complains, such compensation had always been paid without question, for the reason that it was considered to be for the advantage both of the state, and of the contractor that such work should not be estimated in the price of the bid; that on the 29th day of December, 1893, the de-

.fendant, Board of Levee Commissioners for the Tensas Basin Levee District, in view of the fact, that the building of the Amos Bayou levee was of great importance to the people of the district, and that it was very esential that it should be constructed, before the overflow of 1894, and that all formalities of advertising and other delays should be waived, authorizing the then president, W. J. Gray, to contract at once, and without advertising, for the building of the levee, to be completed not later than March, 1894, at the least possible price;

" 'That the assignor of petitioner, having in mind what had been up to that time the uniform custom of the state and district boards, that extra compensation should be paid for grubbing and clearing, agreed with said president to build said levee for the price of sixteen cents per cubic yard;

" 'That in said agreement, nothing was said about extra compensation, because it was mutually understood and implied, that the compensation for such extra work as grubbing and clearing was not included in the price of the bid, but was to be estimated and paid over and above the price of the bid, at the final taking up of the work;

" 'That in view of the urgency of the occasion, and relying upon the uniform custom, and the good faith of the board, his said assignor removed his plant to the ground, and entered upon the performance of his contract without waiting for the execution of the formal written agreement;

" 'That, after his said assignor had been at work for some time, and while he was at his home in Waterproof, he received from the office of the state engineers a draft of an agreement containing the special specifications that the grubbing and clearing should be done without extra compensation, and that, in view of the fact that no such specifications had ever before that time been inserted in such agreements, and that they were in violation of the uniform custom of the state and district boards, and o. the understanding upon which he had bid for and undertaken the work, that additional compensation was to be paid for such extra work, he refused to sign such agreement; but changed said specifications so that the written agreement would conform to the parol agreement, and forwarded the draft, with such changes, to the president of the board;

" 'That the then president of the board failed to sign the agreement as so changed, but assured your petitioner's assignor, that, if he would execute the draft as submitted by the engineers, it should not affect

the parol contract, and that extra compensation should be paid for the work of grubbing and clearing, notwithstanding the special specifications to the contrary;

" 'That petitioner's assignor had then been at work for near six months, and had embarked his credit, and the moneys of his friends, in the performance of the contract, and found himself so circumstanced, that it was necessary for him either to abandon the work to the detriment of the public interest, and to his own financial loss, or to execute the agreement with the specifications inserted by the state engineers, and to rely on the good faith of the president of the board;

" 'That being a poor man, and having embarked his credit, and the moneys of his friends in the work, he was forced to yield, and to sign the agreement as submitted by the state engineers, relying upon the good faith of the board to do justice in the premises, and that under such duress, and upon such express promise of the president of the board, he did, on the 11th day of June, 1894, sign such agreement;

" 'That the then president of the board, W. G. Gray, at all times recognized the justice of his claim for extra compensation for grubbing and clearing, and after the work was completed and estimated repeatedly promised to pay the claim now in suit, and would have paid the same but for disagreements and dissensions between the members of the board, not connected in any way with the claim, which resulted about October 1st, 1895, in the formal action of the board prohibiting the president from drawing any warrant without special authority of the board;

" 'That petitioner has submitted said claim to the board, and said board, while not denying the justice of the claim, has refused to pay the same, upon the pretext that such contract so executed by petitioner's assignor under such duress, and upon the express promise of the then president of the board, that it should not affect this claim, is valid and binding in law.

" 'Wherefore, in consideration of the premises, petitioner prays, that said contract so executed by him on said 11th day of June, 1894, be annulled and avoided for duress, and error and fraud, and want of consideration, and that the parol contract between petitioner's assignor and the president of the board, duly authorized by the resolution of the board, be judicially enforced;

" 'And that the Board of Levee Commissioners of the Tensas Basin Levee District be cited to answer this demand;

" 'And that he have and recover judgment against said defendant for the said sum of two thousand, three hundred dollars with legal interest from January 1, 1895, and costs of suit;

" 'And for general and equitable relief.' "

The object of this suit is to recover *extra compensation* for the work of *"stumpage and clearing,"* as not having been estimated in the price bid for the work; and that such had been the uniform custom of the state and district boards in accepting contracts for the building of levees.

That in this case the defendant had waived the formality of advertising, and authorized its president to make with plaintiff's assignor a contract for the building of the Amos Bayou levee, by parol.

That, in the verbal agreement between them, nothing was said about extra compensation, for the reason that, according to custom and usage, that reservation was understood; and same was not included in the price agreed upon.

That after said assignor had been at work for some time, he received from the State board of engineers a draft of an agreement which contained the specification *that grubbing and stumping should be done without extra compensation;* but that he refused to sign same —relying upon the aforesaid custom and usage—but, having so altered said draft as to conform thereto, he returned same to the board.

That the *then president* declined to accept the *altered* agreement, but assured said assignor, that if he would execute the contract as it was first proposed, it should not affect his *prior parol contract,* and that extra compensation should be paid him, notwithstanding its stipulation to the contrary; and that he assented to this proposal under protest, and signed same under duress, as it was necessary for him to either abandon the work to the detriment of the public interest, and his own financial loss, or execute the agreement with said specifications inserted therein.

In other words, plaintiff's proposition is, that he accepted and signed a written contract with the defendant, to do the work, which contained an express stipulation that no charge or extra compensation should be allowed or paid, for stumpage and clearing; and after having enjoyed its benefits and reaped all of its advantages, to institute suit for the annulment of that provision, so as to enable him to claim extra compensation upon the faith of a parole covenant made with the president, in exact opposition thereto.

17

It requires no argument to prove that such a proposition is absolutely untenable in law.

It is evident that the alleged duress under which the assignor signed the agreement, was no duress at all; and, if he signed same under duress, the effect of it would be to undo the transaction, and set the whole matter at large.

But, this is exactly what plaintiff does not propose to do.

To our thinking it is plain, as it seemed to have been to the judge *a quo,* that plaintiff's petition states no cause of action.

Judgment affirmed.