On Motion to Dismiss the Appeal.
BREAUX, J.
Defendants and appellees move to dismiss the appeal on the ground that they were not served with legal citation of appeal, nor with copy of order and petition of appeal, within the legal delays, owing to appellant’s fault; and appellees moved to dismiss on the further ground that the transcript filed fails to show that the order of appeal was granted within the 12 months following the date of the judgment. The facts are, relating to the first ground to dismiss, as stated by the deputy clerk of the district court, if the clerk’s affidavit can be considered at all, after the 12 months before mentioned, that the delays in issuing the citation of appeal and accompanying papers were due to the appellant’s neglect to pay particular costs, although called upon to pay.
It appears, by the affidavit only, that the appellant did not pay costs of the citation and copy of order of appeal before November 5, 1902, some time after the 12 months had elapsed.
These papers were then placed in the hands of the sheriff to be served.
With reference to the second ground of the motion to dismiss, the facts are that the order of appeal, though signed, is not dated; but it remains that the petition of appeal, on which the order of appeal was written, was filed within the 12 months, and the order also. The bond of appeal, also, was filed in due time.
Returning to the first ground of the motion to dismiss, we can only say that, whilst it is true that citation is the basis upon which rests the appeal, and that it should be served within the 12 months in order to enable an appellant to bring up his appeal, yet good reason may arise for not dismissing the appeal, even after the 12 months .have elapsed.
We think that in this case it is not evident that the appellant is illegally responsible for the delay. We understand that at the end of the 12 months from date of judgment the clerk called on appellant for costs of making papers to be served (if we should consider at all the affidavit in question).
We are told by the appellees that these costs, the failure to pay which caused the delay, were trivial, and that it is impossible that they could not have been procured in time to have the service made. The amount of these particular costs and the ability to reasonably procure them are not grounds to dismiss the appeal, unless the clerk points out the law under which the demand was made and which justified him in postponing service of appeal as before mentioned.
The petition for the appeal prayed for service. It only remained for the clerk to issue the papers. The remedy did not consist in withholding the papers until the costs for preparing them had been paid.
Prior to filing the suit, the clerk has it in his power to require security, and as the suit progresses he may require his costs to be paid, and a contingency may arise when he would be justified in declining to perform *231 services for- a delinquent litigant in matter 'of costs. If such was the case here, it is not made evident in the record. We only have to deal with the naked fact that the clerk refused to perform particular service in matter of costs of suit before payment. To this we cannot give sanction. The service should have been made.
We do not consider the second ground before stated as fatal to the appeal.
The presumption is that the order of appeal was timely filed, and that when it was filed it had been signed.
The presumption becomes an absolute certainty when it is considered in connection with the fact that the filing of the clerk shows that the petition of appeal and the order of appeal were filed in due time. The bond of appeal based upon this order also shows that the order must have been signed within the 12 months.
The motion to dismiss is therefore overruled.
Statement.
MONROE, J. This is an action for the recovery of damages for personal injuries sustained by the plaintiff and his wife, and for loss otherwise resulting from a collision between plaintiff’s milk cart, driven by himself, and one of the defendant’s cars. The answer is a general denial, and an averment that the injury and loss complained of, if any have been sustained, were caused by the negligence of the plaintiff. The facts, as we find them from the record, are as follows: Upon a cold, wet morning in January, 1899, the plaintiff, making his usual rounds, delivering milk to his customers from a two-wheeled cart, in which he was 'standing whilst his wife was seated, to his left, drove northward along Galvez street and attempted to cross the railroad track on Dumaine street, which street and track intersect Galvez street at a right angle. In making this attempt, and in view of the fact that he intended going westward, upon the north side of Dumainestreet, his approach to the track was slightly obliqued in the direction mentioned, and he- and Ms wife admit that neither of them, at any time, looked along Dumaine street to the-eastward. They therefore failed to see the-defendant’s car, No. 25, which was approaching from that direction; and, as the motorman failed to see the cart in time to enable Mm to stop the car, the right shaft of the-cart and the left front corner of the front platform of the car came into collision, with the-result that the shaft was broken, the plaintiff’s horse was thrown down, thereby breaking the other shaft, the plaintiff and his wife were thrown out and seriously injured, and the umbrella post, supporting the left front corner of the roof of the platform, as also the gate leading to the platform, of the car, were-more or less bent and injured. The theory of the plaintiff is that as he approached Dumaine street he heard a bell announcing the approach of a car, and that, having stopped his cart in order to allow the car to pass, he assumed that no other was coming, and, without looking to verify his assumption, attempted to-cross the track, immediately behind the-passing car, when he was struck by a seeopd car, of the approach of which no notice, by bell or otherwise, had been given. The theory of the defense is that the plaintiff drove briskly along Galvez into Dumainestreet and did not stop or look until the collision occurred, that the car No. 25 was the only car passing at the time, that the motorman of that car sounded Ms bell and “slowed up” as he approached Galvez street,, from which the cart emerged so suddenly that, so far as he was concerned, the collision was unavoidable. There is a preponderance-of testimony (though, in view of the character of some of it and of the fact that it conflicts with that offered on behalf of the defense, it is not altogether convincing) to-the effect that there were two cars, and that the collision occurred with the second,. *232 which followed the first very closely. For the reason above given, the testimony offered on behalf of the plaintiff, to the effect that he actually stopped his cart in order to allow the .first car to pass, also fails to carry absolute conviction. There are two witnesses who swear positively that he did not stop it, and, although the plaintiff and his wife testify, in general, to the contrary, we observe that the latter is at one time interrogated, and answers as follows:
“Q. Both he and the boy testified that you came down in a rush and drove right into the car? A. We did not. Mr. Dewez stopped, we heard the bell ringing, and- he stopped, slo w, and waited until the car passed, and not a soul to be seen there.” (Italics by the court.)
But, whether the plaintiff stopped his cart, at a distance of ten or fifteen feet from the track, at a point from which he could not have seen a car approaching from the eastward, as he says was the case, or whether he merely “slowed,” or whether he neither stopped nor slowed, the admitted fact remains that he attempted to drive onto the defendant’s track without once looking to see whether or not, at that moment, a car was approaching; the following statement, in the brief of defendant’s counsel, concerning his testimony on that subject being sustained by the record, to wit:
“He was asked 15 times by his counsel why he did not see the car. He answered * * * that he had to watch ahead; * * * that he did not look; * * * that he could have turned around and seen; * * * that he did not know whether he looked or not; * * * that there was no curve in the track; * * * that, on account of the shed, he could not see the car ‘far back;’ * * * that there was nothing to prevent his seeing the car; * _ * * that he did not see the oar because he did not look for it.; * * * that he did not look, because he had to go ahead and serve his customers on Dumaine street; * * * that he looked forward ; * * * that there was nothing but the drug store which prevented his seeing, and that this was because there was no window in the side; * * * that it was because the car was behind him; * * * that, in substance, this was the only reason: ‘Because I did not see it. * * * I can’t tell you the reason why.’ ” (Italics by the counsel.)
The shed and drug store referred to are situated on the southeast comer of Galvez and Dumaine streets, the shed extending over the banquette to the curbstone; but from a plan, drawn upon a scale, which is in evidence, it appears that from a point 16 feet from the track the plaintiff could have seen, outside of the shed, for a distance of 70 feet along the track upon which the car was approaching, and from a point 10, or even 12, feet from the track, he could have seen eastward on Dumaine street for a mile or more. The shed itself, it may be remarked, did not obstruct his view, since the proof is that it is so high that he could have seen under it; but there appears to have been a canvas awning suspended from the roof, which we assume constituted an obstruction. Even so, however, the plaintiff, as we have stated, from the moment that he reached the point at which he says that he stopped, about 3 feet outside of the Dumaine street curb line, could have seen a car at least 70 feet distant to the eastward, and when he reached the curb line which is about 12 feet distant from the track, he had an unobstructed view along Dumaine street to the river. The colliding car could not have been moving very rapidly at the moment of the accident, since, according toi the testimony adduced on behalf of the plaintiff, it was stopped within 10 feet of the place at which the collision occurred. It is shown that Dumaine street measures 29 feet in width between curbs, and 53 or 54 feet in width between property lines, and that the distance from the' rail upon either side of the track to the curb on the same side is 12 feet. The learned judge a quo concludes his opinion by saying:
“My judgment is that plaintiff’s contributory negligence was the direct cause of the collision, and that he cannot recover. I can only regret his misfortune. Judgment for defendant.”
And from the judgment so rendered the plaintiff has appealed.
*233 Opinion.
We are unable, after a careful consideration of the facts, to reach the conclusion that the motorman of ear No. 25 was any more at fault in not seeing the milk cart than was the plaintiff in not seeing the car in time to avoid the collision. If it be true that the car was not visible to the plaintiff until the latter, emerging from Galvez street, reached the curb line of Dumaine street, it is equally true that, until then, the' milk cart was not visible to the motorman. And if, from that moment to the moment of the collision, the motorman and plaintiff were each oblivious of the approach of the other, it cannot be said that the motorman was most to blame, or that his negligence, rather than that of the plaintiff, was the proximate cause of the injury, since the car was, at least, as easily seen and heard as the milk cart.
It is admitted that the plaintiff neither looked nor listened, and neither saw nor heard the colliding ear until the moment of the collision. The motorman, upon the other hand, says that in approaching Galvez street he sounded his gong and “slowed up,” and then, seeing the way clear, again started, “with one notch,” when a milk wagon came at a fast trot and dashed into the front part of his car. It appears, however, that he applied his brake to such effect that the car was stopped within 10, he says 5, feet of the place where the collision occurred. That the car must have been very near when the plaintiff attempted to drive his cart upon the track is evident from the fact that the points of contact were the right shaft of the wagon and the left front corner of the front platform of the car; and it is equally evident that the two vehicles, traveling upon lines which intersected each other almost at right angles, must have reached the place at which they collided at the same instant, and hence that the car no more ran into the cart than the cart ran into the car; and this would be equally true, whether both vehicles were moving at the same rate or at different rates of speed. It is said that, as one car had just passed, the plaintiff had no reason to expect another, and it is deduced therefrom that he was justified in acting upon the assumption that no other was near, although, by merely turning his head or his eyes, or by listening for a moment, the assumption would have been annihilated by the fact, brought to his notice through his senses. The premise and deduction stated are alike based on the alleged fact, which for the sake of the argument is conceded, that one car had just passed, and, further, upon the following statement, made by the defendant’s superintendent, in the course of his testimony, to wit: “No, sir; we have a rule enforcing one block distance between two cars” — which statement was made in response to the question, by counsel for the plaintiff, “You don’t know what the distance was between the ear that had just passed and the one that did the damage?” We are not specifically informed as to the purpose of the rule referred to, and, in the absence of explanation upon the subject, conclude that it concerns rather the convenience than the safety of the public, and that its enforcement must depend upon varying conditions. Thus, if one car should get out of order, so as to be unable to move with its own apparatus, it cannot be supposed that another would not be allowed to push or trail it to its destination; or, if one car should be delayed by an obstruction, or by taking or discharging an unusually large number of passengers, we should hardly imagine that it would be a violation of the spirit of the rule that another, the motorman of which is instructed to make schedule time, should close up, momentarily, within the proscribed distance. But, however that may be, and assuming that in the ease at bar the colliding ear had violated the spirit, as well as the letter, of the rule, we are unable to concede that the plaintiff was therefore at liberty to close his eyes and ears, and, because the car *234 was where it ought not to have been, drive into it, or into a position where a collision with it was unavoidable.
The judgment appealed from is therefore affirmed.
See dissenting opinion of NICHOLLS, J., 39 South. 436.