A. F. PETERSON v. A. C. PERALTA, Appellant.

(January 18, 1926.   Opinion and Decree.)
(February 1, 1926.   Rehearing Refused.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Builders and Buildings—Par. 12, 13.**

All that the law requires of a contractor is that he shall substantially comply with the plans and specifications.

2. **Louisiana Digest—Builders and Buildings—Par. 17.**

A contractor who fails to do the work according to contract may still recover the value of the work he has done; the remedy of the owner is a reduction of the price agreed on to an amount sufficient to complete the contract.

3. **Louisiana Digest—Builders and Buildings—Par. 18.**

Although a building contract provides that the contractor shall be entitled to charge for extra work unless the same is ordered in writing, the contractor may recover when the alteration or increase is so great that it cannot be supposed to have been made without the knowledge of the owner.

Appeal from Civil District Court, Hon. E. K. Skinner, Judge.

This is a suit by a building contractor against the owner for $1,298.50 under a contract and for extras. Defendant in his answer prayed for judgment rejecting plaintiff's demand and judgment in his favor instead for $2,145.00. There was judgment in favor of plaintiff as prayed for. Defendant appealed. Judgment amended and affirmed.

Westerfield, J., dissents.

L. L. Dubourg of New Orleans, attorney for plaintiff, appellee.

Terriberry, Rice and Young, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J. This is a suit by a building contractor against the owner for $1,298.50 under a contract and for extras.

The plaintiff alleged that on May 22, 1922, he made a contract with the defendant for the construction of a building for the price of $5,810; that he completed the building in accordance with the contract; that there remains due to him on said contract the sum of $1,162.00; that in addition to the contract the plaintiff did extra work under instruction of the owner and under his supervision amounting to $136.50, making a total of $1,298.50, which the defendant refuses to pay.

The defendant, in an extended answer divided into sixteen paragraphs, admits the contract and his refusal to pay the two amounts claimed, but denies all the other allegations of the petition.

Further answering, he alleges:

1st. That at the time he accepted the building he had not had the opportunity to examine the premises; that the plaintiff kept the keys of the building and refused to allow the defendant to inspect it until he had signed an acceptance;

2nd. That upon inspecting said building he ascertained there were numerous defects, which he enumerated in two letters addressed by him to the plaintiff;

3rd. That in accordance with the building contract J. B. Humphreys, building expert, inspected the building and reported that the building was not erected in accordance with the contract;

4th. That the building contract contained the stipulation that the fifth payment shall be due thirty days after the said building is completed and accepted, provided that in each case of said payments a certificate shall be obtained from said expert;

5th. That the building contract contained the further stipulation that no new work of any description shall be considered as extra unless the consent of the owner is first obtained in writing;

6th. That owing to the failure of the plaintiff to employ proper materials and workmanship and to erect the building in accordance with the plans, the defendant has been damaged in the sum of $2,000.00;

7th. That it is stipulated in said contract that the contractor shall be liable for all costs and attorney's fees incurred in any legal proceeding made necessary by the failure of the contractor to comply with his contract, which fees were fixed at five per cent on the amount of the bond of $2,905, or $145.25.

Defendant therefore prays for judgment rejecting plaintiff's demand, and for judgment in his favor against the plaintiff for $2,145 and all costs of suit.

There was judgment in favor of plaintiff as prayed for and defendant has appealed.

The contract under consideration was dated May 22, 1922; the building was accepted August 17, 1922; the case was tried in the District Court in March, 1923.

The presumption is that the plaintiff has complied with his contract.

He swears to it as a witness and he is corroborated by Hoduet and Scott, foremen for plaintiff.

The burden of proof is upon the defendant to show that he has not done so.

We shall examine each of defendant's objections in their order.

1st. That the defendant had not had the opportunity of inspecting the building because the plaintiff kept the keys and refused to deliver them to the defendant until he had accepted the building.

Concerning this complaint the plaintiff testifies:

Q. Was Mr. Peralta around the work very often when the building was going on?

A. He was there every morning and always got home at two o'clock in the afternoon, except when he took a trip for one week or ten days.

Q. He operated a grocery store in that block while the building was being erected?

A. Next door.

Wm. Scott says:

.Q "How often was Mr. Peralta around the building when it was being constructed?

A. "While I was there he was there every day; he runs a grocery store right beside the building."

H. H. Hendricks says:

Q. How often was Mr. Peralta around the house while it was going up?

A. Quite often; I could not say exactly, but he was there every day while I was there.

The defendant does not deny this testimony.

2nd. Numerous defects enumerated in two letters.

Both letters are dated October 9, 1922, nearly two months after the defendant had accepted the building and occupied it, August 16, 1922.

The complaints mentioned in the first letter are:

1st. That a canvas on the porch was essential and therefore not an extra. It was not mentioned in the specifications and therefore was not considered essential by the architect who prepared them. It was ordered afterwards and is therefore an extra. 2nd. The plans call for six-foot awning over the hanging part of the roof on the sidewalk. "You had it nine

foot in point." The defect in the awning is not pointed out. Morgan D. E. Hite, architect, expert for defendant, estimates $100 as the cost of putting it in proper shape; but he does not say why. 3rd. The plaintiff led the defendant to believe he would not charge for the bookcase, but he did not tell him so.

The bookcase cost the plaintiff $70.

4th. No damp proof slate course on foundation. One witness swears there was. 5th. No creosote on sills. Two witnesses swear that they were creosoted. 6th. Door in toilet should be lattice instead of panel. No testimony to that effect. 7th. Rear porch, water settles on same, leaks in front rooms; leaks over bath room; all windows leak from sills. Conflicting and insufficient evidence in support of any of these charges. No evidence that any repairs were made by the owner to remedy the alleged leaks. 8th. Cylinder lock on Orleans street entrance put on upside down. Scott, a carpenter, foreman, answers that charge as follows: "That is absolutely untrue." There is no contradiction of his testimony. 9th. All sashes work hard. No evidence. 10th. Step on Orleans street entrance not up to plans. No evidence.

In the second letter of the same date the defendant writes to plaintiff:

"On September 18th you requested me to make them (the defects) in writing; so therefore I will mention them all while I am at it." Then follows:

1st. Roof round instead of square on Orleans street. The defendant saw the change and acquiesced in it.

2nd. Staircase. The evidence is that the stairs were made wider at defendant's request to permit the installation of a toilet beneath.

3rd. All windows leak. The plaintiff and his workmen deny this. The defect is not satisfactorily proven; nor is it shown that defendant ever repaired the windows, after his occupation of the house.

4th. Lavatory not what specifications called for under stairs. No evidence on that point.

5th. No clean out box for sewerage. The evidence is that it was attended to.

6th. Sash cord in window broke. No evidence in support.

7th. Two locks out of commission. No evidence.

8th. Gas jet leaks. No evidence.

9th. Putty on glasses off. No evidence.

10th. Transom rods instead of rope. It is sufficiently shown that a rod was not possible.

11th. Door frame set wrong. No evidence.

12th. Water settles in gutter on awning. That was adjusted.

13th. Pavement cracked on corner of store. No evidence.

14th. Plastering not up to specifications. The contrary is proven.

15th. Dormer on top of house. The evidence shows conclusively that the change in the style of the dormer from a hip to a gable was effected by the plaintiff at a greater cost to himself without charge and with the knowledge and approval of the defendant. "Besides, there was no resulting damage." Dewey vs. Orleans R. Co., 115 La. 432, 39 So. 433; 19 Bandry S. 2930-2934; 9 C. J. 744, Sec. 79.

The contract was substantially complied with, Hebert vs. Weil, 115 La. 425, 39 So. 389; Dugue vs. Levy, 114 La. 21, 37 So. 995; Pratt vs. McCoy, 128 La. 572, 54 So. 1012; 7 Ct. App 73; 102 N. Y. 88; 8 Elliot on Contracts, S. 1606, 3693.

A contractor may recover the value of the work which has enured to the benefit of the owner, although the work be defective or unfinished, if a price has been agreed upon; the remedy of the owner is

a reduction thereof to an amount necessary to perfect or complete the work according to contract. Babst vs. Peritz, 7548 Orl. App., 12 Orl. App. 126.

16th. Debris left after construction. No testimony that defendant paid any money.

Upon the trial of the case testimony was admitted beyond the objections set forth in the letters. The building contract contained this clause:

"Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by Mr. J. B. Humphreys, the expert of the party of the first part (A. C. Peralta), or by some other known capable architect to be appointed by said party of the first part, and his decision shall be final."

Examined as a witness, Mr. Humphreys testified that he had been asked by Mr. Young to look the building over and tell if "it is in accordance with the plans and specifications." Mr. Young is the attorney for the defendant and he loaned him the money to pay for the erection of the building. Mr. Humphreys testified that the building was not in accordance with the plans and specifications. He was asked: "What do you think it would take in dollars and cents to put that building in shape in accordance with the plans and specifications?" He answered: "Between $550 and $600."

Being asked how he distributed that cost, he answered:

1st. The front stairs would have to be taken out, as they are not built according to the plans and specifications.

The only objections that he found to those stairs are that the plans call for panels on the newels and they are plain, and that there are no wall boards on the stairs. He does not say how much it would cost to put up a panel or wall board. To state that these stairs must be taken down because of these defects is a patent exaggeration. This expert estimates the cost of taking down the steps and rebuilding them at $280.

2nd. The frames do not look like factory work, and it would cost $200 to replace them. No other objection to these frames is pointed out except that they do not appear to be factory work. Scott, plaintiffs' foreman, says it was all factory work. But there is nothing on the contract that requires wood work to be made by the factory.

3rd. The gables or dormers are not in accordance with the plans. It would cost $80 to change them.

He says the gables are good as they are. It is only a matter of taste.

These three items amount to $555. The change of the stairs because of the absence of a panel or of a wall board is shown to be unnecessary to say the least; the charge against the factory work is not true, and the charge in the shape of the dormers was made with defendant's approval.

Mr. Humphreys also complains that the stairs are not plastered. He does not say what part of the stairs, nor what the work would cost.

He also says that a sink has been put in the lavatory instead of a washstand. The difference in cost would be $15.

He further says that he was not in the building during its construction and was never called upon for a certificate.

Morgan D. E. Hite is also an architect. He is a brother-in-law of Mr. Young. He was called in by him "to see if it was in accordance with the plans and specifications."

He examined the building in the presence of the defendant and of the plaintiff and his son, and Mr. Waldhorn. He made a report which was signed by himself and Mr. Waldhorn, representing the plaintiff.

The plaintiff denied that Waldhorn represented him or was authorized by him to sign the report. Defendant did not prove Waldhorn's authority and did not examine him as a witness; one who alleges agency must prove it. Phelps vs. Hodge, 6 La. 524; McCarty vs. Straus & Bauer & Straus, 21 La. Ann. 592; Patterson vs. Litton, 23 La. Ann. 274; 8276 Orl. App.; 2 C. J. 915 S. 635;· 2 Greene S. 158. He estimates it would cost $575 to make the necessary repairs and changes as follows:

1st.   Relaying canvas, $100, although Humphreys testified $30.00.

2nd.   Putting the stairs in conformity with the plans, $14.

3rd.   Leaks in roof, $150. No proof of any leaks.

4th.   The awnings over the sidewalk. $100. No one points out defects in these.

5th.   Electrical work, $20. No defects pointed out.

6th.   $6 each for 18 windows in a very leaky condition. No other witness corroborates that testimony; it is denied, and it is proven that the owner had made no repairs to the windows since he occupied the house. He knows nothing about Humphreys.

The last witness for defendant is A. C. Peralta himself. He was not in the city all the time that the building was going on; he has a grocery in the same square; he spends part of his time in his grocery; he was also, at the time, commissary for the markets of the city; he signed the acceptance of the building, although there were lots of things to be done, because plaintiff's attorney told him it was a mere formality to enable him to get a certificate from the mortgage office that there were no privileges; plaintiff never told him he would charge him for extra work: when he first saw the dormer windows plaintiff "had one up and the other one mighty near complete"; he could not have written two letters the same day unless they were written by Mr. Young; since the house was turned over to him he has been living in part of it with his family; there is a little grocery in the building run by his son; he has had nothing done to the building since he took it, nor has he spent a dime except to remove the debris; the plastering was not even in some places; the specifications did not call for a bookcase nor for a door in the kitchen.

In all his testimony there is not a word of complaint concerning anything else.

It thus appears that the two letters written by the defendant or by his attorney differ as to the defects, the testimony of Hite still more, while the testimony of the expert Humphreys points out no defects, but only deviations from the plans.

· Nor is there any evidence that the defendant has suffered $2,000 damages or any part thereof.

On the other hand, the plaintiff and his two foremen and a carpenter all affirm that the building was properly constructed and deny that there were any leaks or defects about it. The trial judge has come to the same conclusion and has decided in favor of plaintiff.

C. Pumilier, building expert for the Italian Homestead Association, testified to the same effect. He says: "As an expert in the building line, and having had that experience for the last sixteen years in construction, I feel and know that the building is up to standard."

The architect, Hite, himself, said in his report: "We find the building as a structure substantially constructed, but inferior in the finishing work and defective with respect to leak proofness of roof and water proofness of windows."

It is settled that although a building contract provides that the contractor shall not be entitled to charge for extra work unless the same is ordered in writing that the contractor may recover when the alteration or increase is so great that it cannot be supposed to have been made without the knowledge of the owner. C. C. 2764 (2735); Crook vs. Tensas Basin Levee Dist., 51 La. Ann. 285, 25 So. 88; State vs. Meche, 114 La. 231, 38 So. 152; Brink vs. Bartlett, 105 La. 336, 29 So. 958; Fitzner vs. F. A. Noullet & Co., 119 La. 900, 44 So. 722; Harvey vs. Monnier, No. 9127, Orl. App. 8488-7254-9613; Sauzeneau vs. Delacroix, 5 Mar. (O. S.) 386; Fossier vs. Heiries, 2 La. 490; Percy vs. Peyroux, 5 Rob. 179; Doyle vs. Ryan, 9 Rob. 404; Smelser vs. Williams, 10 Rob. 97; Patrick Lyons vs. Dymond & Lally, 23 La. Ann. 709; Succession of Bothick, 110 La. 111; 34 So. 163; Derouen vs. Romero, 110 La. 210, 34 South. 415; Queensborough Land Co. vs. Cozlaux, 136 La. 724, 67 South. 641; Collins vs. Hamilton, 14 La. 542; 6 Toull. 446; Alston vs. Ross, 4 Rob. 399.

It is therefore ordered that the judgment herein be reduced from one thousand two hundred and ninety-eight 50-100 dollars to one thousand two hundred and sixty-nine 50-100 dollars, the repairs to the stairs and the cost of a washstand, and as thus amended that it be affirmed, the plaintiff and appellee to pay the costs of appeal.

———

The parties to the building contract agree to abide by the decision of an arbitrator named in the contract. I see no reason founded upon fraud or extreme partiality to overthrow his findings. I therefore respectfully dissent.

(Signed.)    W. W. WESTERFIELD,
Judge.