## HENRI PETETIN, Inc., v. BOARD OF LEVEE COM'RS OF ORLEANS LEVEE DIST.

### No. 14247.

Court of Appeal of Louisiana. Orleans.

June 27, 1932.

James Wilkinson, George Piazza, and N. H. Polmer, all of New Orleans, for appellant.

William Donnaud, of New Orleans, for appellee.

WESTERFIELD, J.

The plaintiff in this suit was awarded a contract by the board of commissioners of the Orleans levee district (hereinafter referred to as levee board), wherein it undertook the engraving and lithographing of 4,200 bonds of $1,000 each of the "New Orleans Lake Front Improvement Bonds." The contract price was $946. Before the contract could be completely executed, the levee board canceled it, and plaintiff brought this suit for $848.50 for the value of the work which had been done in connection with the preparation of the bonds up to the time of cancellation. The levee board answered denying liability upon the ground that the proof copy of the bonds submitted by plaintiff did not measure up to a sample bond of the "Bethlehem Steel Corporation," which accompanied the bid of plaintiff, and concerning which it was agreed that the bonds to be prepared by plaintiff were to be similar. There was judgment below as prayed for, and defendant has appealed.

The contract was given to plaintiff on June 8, 1931, and a manuscript copy of the phraseology of the bond handed to Petetin at that time. As the plant of the plaintiff, which is situated in the city of New Orleans, did not have proper facilities, the plaintiff contracted with the Central Bank Note Company of Chicago, Ill., for the engraving of the bonds. About October 30, 1931, a proof was received from the Central Bank Note Company by Petetin and immediately transmitted to defendant. The proof thus submitted to the levee board was criticized as containing many inaccuracies in composition. A new draft of the wording of the bond was thereupon given plaintiff and another proof submitted. When the second proof was submitted to the levee board, it was objected to upon the ground that the type was not similar to that submitted in the sample bond of the Bethlehem Steel Corporation, in that it was smaller and not legible, and it is this last contention that is mainly relied upon to defeat plaintiff's claim.

██ The case turns upon the question of whether or not the proof representing the work done by plaintiff was similar to the sample submitted when its bid was received. We have the sample and the proof before us, and we observe that the two are similar in all respects, except the size of the type, the sample being composed of larger type, a fact which is explained upon the ground that the manuscript submitted to plaintiff contained more words than the sample bond, and, in order to get the wording within the same space, it was necessary for some part of the bond—in this instance the concluding part—to be engraved in smaller type. It was also objected that the paper used in preparing the proof was of inferior quality, but as explained by the testimony, the paper used in the making of the "hand proof" was not of the same quality as would be used in the bonds themselves. The experts placed upon the stand by defendant, Mr. Dameron and Mr. Egerton, both agree that the proof was similar to the sample. Both noticed the inferiority of the paper and both noticed the fact that toward the close of the wording on the bond the type in the proof submitted was smaller than that which appeared in the sample.

The obligation of the plaintiff in this case was to lithograph 4,200 bonds, of a thousand dollars each face value, in a manner similar to the sample submitted, or substantially so. Dugue v. Levy, 114 La. 21, 37 So. 995; Hebert v. Weil, 115 La. 424, 39 So. 389; Pratt v. McCoy et al., 128 La. 570, 619, 54 So. 1012; Blakesley v. Ransonet, 159 La. 310, 105 So. 354; Davies v. Rascon Mfg. & Development Co., 7 Orl. App. 73, 87; Peterson v. Peralta, 3 La. App. 516; Davidson v. McGrath, 5 La. App. 125; Elliott on Contracts, Vol. 4, § 3693.

It appears that when the manuscript copy of the bond was given plaintiff, it contained certain phraseology which was afterwards changed and that the name of the fiscal agent was incorrectly given. This fact, we believe, accounts for the objection of defendant to the first proof submitted. Concerning the type used, which was the subject of the objection to the second proof submitted by plaintiff, plaintiff offered to have the type changed under an arrangement which would have precluded any profit to itself. On the whole we are of opinion that plaintiff made every reasonable effort to satisfy defendant and that the cancellation of the contract was not due to its fault.

The necessity for haste in obtaining the bonds, which is emphasized throughout the voluminous correspondence in the record, does not seem to have been met by awarding the contract to another local printing corporation, Dameron-Pierson Company, Inc., as was done following the cancellation of plaintiff's contract, for that corporation was obliged to have the bonds engraved in Pittsburg, Pa.

██ Rev. Civ. Code, art. 2765, reads as follows:

"The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require."

Plaintiff agreed to do the work for $946. It contracted with the Central Bank Note Company of Chicago, Ill., to do the engraving for $775. Its gross profit was therefore $171. He settled with the Central Bank Note Company for $446 and, according to his own statement, its expense was $25, a total of $471. We have concluded to add the sum of $50 as damages, making $521, the amount for which it should have judgment.

For the reasons assigned the judgment appealed from is amended by reducing the amount awarded plaintiff from the sum of $848.50 to $521, and, as thus amended, it is affirmed.

Amended and affirmed.