Plaintiffs have appealed from a judgment of the court below sustaining exceptions of both misjoinder and no right or cause of action filed by defendant.
Plaintiffs allege that the Board of Levee Commissioners of the Orleans Levee District and Orleans Airport Commission, by and through the general manager of the Airport Commission, entered into a contract with plaintiffs by which the said Airport Commission agreed to store their airplane in its hangar at the Orleans Airport, in consideration of the payment of a storage fee of $15 monthly; that the Airport Commission agreed to keep the airplane within the hangar; that, on or about March 29, 1941, said airplane, in violation of the contract agreement, was removed from its hangar, without the knowledge or consent of petitioners, by employees of defendants acting within the course of their employment, or by some other person with the knowledge and consent of defendants; that said employees or other person negligently placed said airplane on the grounds of the airport "without staking or tying it * * * in any manner"; that on the date mentioned a windstorm overturned the said airplane while on the grounds and completely demolished it; that the custom exists, when removing airplanes from hangars, to so "brace or stake" them that they will not be "overturned by any winds"; that the demolition of petitioners' airplane resulted from defendant's *Page 556 
failure to have it "staked to the ground"; that the total loss to plaintiffs because of the demolition of their airplane is $1,381. Judgment for this amount is prayed for against both defendants.
The exception first raised below is one of misjoinder, filed on behalf of each defendant, in which it is urged that the Levee Board does not operate or administer the New Orleans Airport but that same is exclusively under the administration and control of the Orleans Airport Commission, and that, therefore, there can be no solidary obligation as to said parties defendant and "there is a misjoinder of parties defendant * * *".
Article XVI, Section 7 (b) of the Constitution of this State, with respect to the Board of Levee Commissioners of the Orleans Levee District, was amended by Act 292 of 1928, duly approved by the electorate, dividing, for purposes of construction and administration, the total area within its jurisdiction into five (5) zones. It further provided that no work should be commenced in Zone 5 until three zones were completed.
Under paragraph (c) of the amendment the Board was authorized and empowered to construct, equip and maintain, besides other works of a public nature, aviation fields and other like places. The proposed location and construction of the Orleans Airport, being within the area comprising Zone 5 and thus subject, as stated, to the restrictions in favor of the other zones, provoked a second amendment (Act 4 of the Extra Session of 1930), which was in turn duly approved by the electorate. This amendment to paragraph (b) of the Article and section supra, provides:
"The said Board shall have right, jurisdiction, power and authority to plan, execute and maintain all the works and all the phases of the project and improvements undertaken hereunder:
"For the purpose of Construction and Administration the total area is divided in five zones:
* * * * *
"Zone 5. From Industrial Canal to lower limits of project; and * * * said zones shall be completed one at a time, so that one zone shall be finished before another is begun and provided that no work, except that connected with the construction and thecreation of aviation fields, shall be commenced in Zone 5 until three Zones are completed.
"The said airport when constructed shall be administered by a commission to be know as Orleans Airport Commission, composed as follows:
"Three members to be named by the President of the Levee Commissioners of the Orleans Levee District, whose selection shall be approved by the said Board of Levee Commissioners, and three members to be named by the Mayor of the City of New Orleans, whose selection shall be approved by the Commission Council of New Orleans.
"One member to be appointed by the Governor of the State.
"All commissioners shall serve at the pleasure of the appointing power." (Italicizing ours).
Obviously, the amendment was adopted with a view of the construction of aviation fields, irrespective of the progress of works in other zones, thereby removing all prior restrictions on the Levee Board, particularly as affecting the proposed immediate construction of the Orleans Airport.
By the grant to the Levee Board of the "right, jurisdiction, power and authority to plan, execute and maintain all the works and all the phases of the project and improvements undertaken hereunder", including aviation fields, the State resorted to the use of this public agency to effect the improvements contemplated. In respect to these public works, the Levee Board was alone charged with the responsibility of not only their planning and construction, but their maintenance as well. This responsibility involved not only the dedication to public use of the required land, the construction of buildings, with necessary related adjuncts, but a fitting and proper maintenance, the latter necessarily involving the duty of proper operation of these improvements in all of their phases.
It is obvious, therefore, that the Orleans Airport was to, and did, come into being through the agency of the Orleans Levee Board. The constitutional provisions, supra, vesting the Levee Board with the "right, jurisdiction, power and authority" to construct the Orleans Airport makes it manifest that the origin, growth, development and the continued existence of this airport, as an agency of public service, rested exclusively with the Orleans Levee Board. The Orleans Airport, with its lands, buildings, services and other adjuncts *Page 557 
were to be, and are, owned and controlled and within the Levee Board's general supervision, as are levees, drainage and other like projects.
Defendants claim that the airport's administration, being vested in a Commission, the Orleans Levee Board is relieved of all responsibility for all acts of this administrative body. In that we cannot agree. What is designated as the Orleans Airport Commission is purely an agency charged with the administration of a designated portion or branch of the broad functions and affiliations of the Orleans Levee Board. Its duties unquestionably relate to the management, regulation, conduct and proper direction of the airport as a complemental arm of the Orleans Levee Board. In the proper dispensation of public service the Commission enjoys no corporate powers as a body politic, with needful succession; it does not possess the power to sue and be sued, acquire, hold, own and convey property, and has no domicile. Its powers of administration relate purely to that of executing, in a supervisory capacity, one of the various projects owned by and being within the broad scope and functions of the Orleans Levee Board. And it can be fairly said that the present suit, in effect, is one directed primarily against the Levee Board.
In view of these circumstances we conclude that the exception of misjoinder is not well taken and must be overruled.
The exception of no right or cause of action, filed by the Orleans Airport Commission alone, is based upon the allegation that "defendant is a constitutional governmental agency created under the Constitution in aid of state, interstate and foreign commerce; that as an agency of the State it is not liable in tort or for negligence and is immune from any such liability".
It is to be observed that, in connection with this exception, counsel pitch their case upon the theory of governmental immunity from suit in tort, or for damages ex delicto, and make no reference to liability for obligations arising from contract, expressed or implied. Plaintiffs rely principally upon the doctrine that public agencies and boards, such as defendants here, are clearly subject to a suit ex contractu.
The premise and conclusion contained in this exception must be conceded, for it is well settled that a public agency may not be held responsible for damages arising ex delicto. Trumata v. Board of Levee Commissioners, 3 La.App. 785; Lamport Holt v. Board of Commissioners of Port of New Orleans, 137 La. 784, 69 So. 174; Kilberg v. Louisiana Highway Commission, 8 La.App. 441; Orgeron v. Louisiana Power and Light Company et al., 19 La.App. 628, 140 So. 282; Perry v. Louisiana Highway Commission, La.App., 164 So. 335; Fouchaux v. Board of Commissioners, La.App., 186 So. 103, affirmed 193 La. 182, 190 So. 373; Omes v. Department of Conservation, La.App., 187 So. 342; Lewis v. State, 196 La. 814,200 So. 265; Miller v. Board of Commissioners, 199 La. 1071,7 So.2d 355.
Under the allegations of plaintiffs' petition, however, which must be taken as true, this suit would seem to be one for damages for active breach of a valid contract. The rule of government immunity may not be applied in such cases. Fouchaux v. Board of Commissioners, supra; Rome v. London Lancashire Indemnity Company, La.App., 169 So. 132; Omes v. Department of Conservation, supra; Henri Petetin, Inc., v. Board of Levee Commissioners, La.App., 142 So. 859; Id., La.App., 144 So. 280.
In the Petetin case, which involved a suit by plaintiff against the very defendant involved in the present matter, damages were actually allowed plaintiff under R.C.C. art. 2765, because of the illegal cancellation by defendant of a contract under which plaintiff undertook to engrave certain bonds.
In Geary v. Board of Commissioners of Port of New Orleans,139 La. 781, 72 So. 245, 246, plaintiff, as lowest bidder, undertook to construct a wharf and, before completion, the Board of Port Commissioners notified plaintiff of its decision to discontinue the work because certain anticipated funds would not be available to it. Plaintiff protested this action, giving notice it would cause him a loss for which he would hold the Board liable, and carried the work to completion. Suit for damages followed vain efforts toward amicable adjustment. The Supreme Court (quoting from the syllabus), held: "The measure of damages of the contractor was the profits he would have made and which he was deprived of the opportunity of making, found by deducting the total amount it would have cost him to complete the *Page 558 
contract from the total amount he would have been entitled to receive had he completed it."
Of particular interest, also, is the case of Keifer Keifer v. Reconstruction Finance Corporation et al., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (a case strikingly similar to that before us), where the United States Supreme Court, in reversing a judgment of the lower court, held the Regional Agricultural Corporation, a federal governmental agency, responsible in damages, as a compensated bailee for hire, for negligently failing to care for livestock entrusted to such corporation by plaintiffs under a feeding contract.
In view of the authorities, we believe that plaintiffs' petition states a cause and right of action.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, the exception of no cause or right of action is overruled, and this cause remanded for further proceedings according to law and consistent with the views herein expressed.
Reversed and remanded.
JANVIER, J., takes no part.