REGAN, Judge.
Plaintiff, the Board of Levee Commissioners of the Orleans Levee District, as owner and lessor, hereinafter designated for the purpose of brevity as the Levee Board, instituted this suit against the defendant, Magee Aircraft Company, Inc., endeavoring to obtain possession of its property designated as the “Mitchell Hangar”, located in the New Orleans Airport.
Defendant responded thereto and pleaded the exception of vagueness, the want of authority or capacity on the part of plaintiff to institute this suit; and finally the exceptions of no cause or right of action. The exception of vagueness was overruled and the other exceptions were referred to the merits. Defendant then answered and, in substance, denied the allegations of the petition and asserted that plaintiff did not possess the authority, capacity or right to obtain possession of the hangar.
From a judgment in favor of plaintiff ordering defendant to vacate and surrender possession of the hangar, defendant has prosecuted this suspensive appeal.
The record reveals that on April 1, 1950, the defendant, Magee Aircraft Company, *241 Inc., then identified as Magee Reed Company, Inc., entered into a written contract of lease with the Orleans Airport Commission for the use of the Williams and Mitchell Hangars located in the Airport. The lease was for a term of one year at a monthly rental of $1,020.15, with an option to renew for two additional terms of one year or through March 31, 1953. The lease related .that the Orleans Airport Commission was “fully authorized and empowered to enter into this contract of lease” and it was signed on behalf of the Orleans Airport Commission by its Chairman, whose signature was attested to by its secretary. Beneath the foregoing signatures the lease bore the inscription “consented to and ratified by the- Board of Levee Commissioners of the Orleans Levee District” and it was then signed by the President thereof. Thereafter the lease reflected . the signatures of the President and Secretary of the tenant, Magee Reed Corporation. The lease, as we have said hereinabove, expired March 31, 1953. Prior thereto, or on February 3, 1953, defendant, through the medium of a letter addressed to the Orleans Airport Commission-, requested an exten-, sion or re-negotiation of the lease. In reply thereto they were informed by the Secretary of the Levee Board, in a letter dated February 19, 1953, that the Levee Board did not desire to enter into any new lease at this time, but would be pleased to continue defendant’s occupancy on a “month to month basis.” Defendant obviously acquiesced for it continued its occupancy thereof and payments of the monthly rental of $1020.15 were made to the New Orleans Airport.
On September 15, 1954, Charles P. Collins, the Manager of the New Orleans Airport, an employee of the Levee Board, addressed a written notice to the defendant requesting possession of Mitchell Hangar as of October 1, 1954, and also informed defendant that, the rental for the Williams Hangar would be $722.65 per month (the monthly rental for both hangars was $1,-020.15).
On September 27, 1954, defendant sent to the New Orleans Airport its check in the amount of $1,020.15. This check was returned by Collins, who stated in a letter addressed to the defendant, dated September 29, 1954 “I am returning your check in view of the fact that this covers the rent for both the Mitchell and Williams Hangars and the Orleans Levee Board had previously requested possession of the Mitchell Hangar for October 1, as per my letter of September 15, 1954.” The letter then requested defendant to mail a check for $722.65 representing rent for the Williams Hangar. On October 9, 1954, defendant addressed a letter to “The Board of Levee Commissioners, Orleans Levee- District, New Orleans Airport” and, under protest, enclosed its check for the amount of $722.-65 and stated “although our check covering the rent of the Mitchell Hangar for October was returned, I would like to say that we.have funds on deposit and will pay.same whenever the Levee Board is willing to accept.”
When defendant declined to surrender possession of the Mitchell Hangar, plaintiff, on October 5, 1954, filed a rule for possession against the defendant, which was dismissed as of non-suit on October 18, 1954, by the Court below, which was of the opinion “ * * * the President of the plaintiff Board in the absence of a resolution of the Board authorizing such action, has no power or authority to file suit or authorize the filing of suit on behalf of or in the name of the Board. * * * ”.
On October 19, 1954, plaintiff filed the present suit, which was authorized by a resolution of its Board adopted October 18, 1954. No further notice to vacate was given to defendant, plaintiff relying on the sufficiency of the notice of September 15, 1954.
Defendant predicated its defense of this suit both in the lower court and here on the exceptions which were briefly referred to hereinabove. Therefore, we shall consider these exceptions in their categorical order.
In connection with defendant’s exception of vagueness, counsel argues that it was entitled to know prior to trial:
*242 “(a) Was the lease written or verbal?
“(b) When was the lease executed?
“(c) Who executed the lease on lessor’s behalf?
“(d) Who executed the lease on lessee’s behalf?
“(e) What was the term of the lease?
“(f) Who gave notice to vacate to lessee?
“(g) How was notice to vacate given?”
This suit was instituted in conformity with LSA-R.S. 13:4918 which provides that an owner who desires possession of leased premises for any reason may obtain possession by giving notice in writing ten days before the expiration of the mouth, if the rental is on a monthly basis.
The record reflects that the written lease was confected on April 1, 1950, between the defendant and the Orleans Airport Commission by and with the consent of the plaintiff and that it expired on March 31, 1953. When defendant, in February of 1953, requested an extension or re-negotiation thereof, plaintiff refused and informed defendant that it would permit future occupancy of the hangars only on a “month to month basis.” This arrangement was obviously satisfactory to and approved by both parties since the defendant paid the monthly rental of $1,020.15 to the Manager of the New Orleans Airport, who was an employee of the Levee Board and the check for the rent was deposited to the account of the Levee Board.
To maintain a successful ejectment proceeding the essential requisites thereof are that the relation of landlord and tenant exist between the parties; the lease must have expired and proper notice to vacate must have been given to the lessee. All of the foregoing requisites were complied with as is reflected by the evidence adduced during the course of the trial, to-wit: the payment to and receipt by the Levee Board of the rent each month. The termination of the monthly rental of the hangars on September 15, 1954, by virtue of the notice addressed to defendant, which was more than ten days prior to the end of the current-month. Obviously the foregoing facts were in possession of the defendant prior to the trial and the judge below was correct in overruling the exception of vagueness.
Defendant’s second exception attacks plaintiff’s authority or capacity to institute this suit. Its counsel argues “(a) New Orleans Airport is administered by Orleans Airport Commission, a constitutionally created body. Constitution Article XVI, Section 7(b), and this record is completely devoid of any evidence of any action taken by that Commission looking toward the termination of this lease. By definition, the power to administer the Airport — and the hangars thereon — includes the power to lease said hangars and to terminate said leases. The Airport Commission — an agent of the State of Louisiana, created by the Constitution — is the only body which has the legal authority to administer the Airport. This entire action is a bald-faced attempt by one agency of the State of Louisiana to arrogate unto itself, without the slightest semblance of legal authority, the power and authority of another constitutionally created agency of the State. * * * ”
The Orleans Airport Commission, through whom the lease was negotiated in 1950, was never more than an agent of the Levee Board in that transaction. Indeed, in all of the activities carried on by the Orleans Airport Commission during the time it was functioning (the evidence reveals that no meeting has occurred since 1951) the Commission acted at all times for and on behalf of the Levee Board, and necessarily acted with the Levee Board’s consent and approval. The evidence also reflects that the Airport Commission had no employees, no source of revenue, no bank account and it could not contract or expend any funds unless the consent of *243 the Levee Board was obtained. The lease with Magee Aircraft in 1950 bore the inscription “consented to and ratified by the Board of Levee Commissioners of the Orleans Levee District.” When the subject of the lease was brought before the meeting of the Airport Commission, the minutes of the meeting, which are in evidence, reflect that the lease was to be “subject to ratification by the Levee Board.”
If the theory of the case suggested by the defendant was drawn to its illogical conclusion, it would lead to the result that the Levee Board, which the evidence discloses is the owner of the Mitchell Hangar, would not be permitted to exercise the prerogatives of a lessor insofar as the Magee Aircraft Corporation, as a tenant, was concerned; and the Orleans Airport Commission, which cannot sue or be sued, Jurisich v. Board of Levee Commissioners, La.App., 8 So.2d 554, 557, likewise would not be permitted to exercise the prerogatives of a lessor in connection with the defendant as tenant and occupant of the Mitchell Hangar. Therefore, if defendant chose not to pay the rent, who remained to institute suit to enforce collection thereof? In conformity with the defendant’s, hypothesis of the case plaintiff could not since it was not the landlord and neither could the Airport Commission since it possessed no legal status to sue or be sued. Obviously, the lawmakers intended no such absurd result.
Our opinion in the case of Jurisich v. Board of Levee Commissioners, supra, very adequately reconciles the dispute raised by virtue of this exception. There, we said:
“What is designated as the Orleans Airport Commission is purely an agency charged with the administration of a designated portion or branch of the broad functions and affiliations of the Orleans Levee Board. Its duties unquestionably relate to the management, regulation, conduct and proper direction of the airport as a complemental arm of the Orleans Levee Board. In the proper dispensation of public service the Commission enjoys no corporate powers as a body politic, with needful succession; it does not possess the power to sue and be sued, acquire, hold, own and convey property, and has no domicile. Its powers of administration relate purely to that of executing in a supervisory capacity, one of the various projects owned by and being within the broad scope and functions of the Orleans Levee Board.”
Defendant then argues “(b) Assuming, arguendo, that plaintiff is the proper agency to act herein, the action * * * taken is without proper authority. * * * The notice to vacate, dated September 15th, 1954, and issued without prior Board authority, is part of this law suit; a preliminary process separate and distinct from the citation on the rule. * * * Since this notice, being a part of the suit, was a nullity ab initio, the attempt by the Board to ratify it, on October 18, 1954, was clearly ineffective. * * *.”
The provisions of LSA-R.S. 13:-4918 require that a lessee or tenant be given notice to vacate, in writing, ten days before the expiration of the current month, if the occupancy is on a monthly basis. In our opinion the resolution of October 18, 1950 authorizing the President of the Levee Board to institute this suit and ratifying all prior acts in connection therewith, clearly validates the notice of September 15, 1954, which was given by plaintiff to the defendant fifteen days before the expiration of the current month.
Where a suit is dismissed on an exception of no cause of action, notice given within the required time did not lose its efficacy on dismissal of the original suit, but could be used as the basis for the second suit. Pannagl v. Stouder, La.App., 34 So.2d 344.
Defendant’s counsel in urging for our consideration the exceptions of no right or cause of action insist “the lease on which this action is based, whether verbal, written, or reconducted, clearly terminates on the last day of the month. * * * The notice to vacate advises that the rental *244 agreement will be terminated as of October 1st, 1954, the beginning of a new rental month, and not (September 30, 1954) the end of a rental month. * * * The notice here was an improper one, since it attempted to terminate during the term, and not at the end of the term; therefore the lease was again reconducted.”
The fallacious character of this argument is apparent and no useful purpose would be served by indulging in a protracted discussion thereof. Any notice in writing which clearly indicates to the tenant that the lessor desires to put an end to the lease and to obtain possession is sufficient as long as it is served ten days or more before the expiration of the month. Delmar Realty Co. v. Alberstadt, 10 Orleans App. 148.
Counsel for defendant in urging the validity of the foregoing exception finally argues “the lease on which this action is based is a lease of two hangars for a specified rental for the whole * * A lease is an indivisible obligation. LSA-Civil Code, Articles 2108, 2109, 2697. * *. This proceeding is an abortive attempt on the part of the Board to divide the indivisible- — and the attempt must fail.”
We find no merit in the foregoing argument. The Levee Board is not en-" deavoring to ’ cancel an • existing lease, but is simply insisting upon obtaining possession of one of two hangars which it owns and which the defendant was permitted to occupy from month to month. The occupancy' or rental of the two hangars is not one in the nature of things that cannot be divided. Actually the defendant was renting hangar space. 'The two- buildings are entirely separate and located some distance away from each other. Possession and rental of one created no obligation on the part of the lessor to permit the lessee to occupy both. When plaintiff gave notice to defendant on September 15, 1954, that it desired possession of the Mitchell Hangar, this notice could also have legally encompassed plaintiff’s desire for possession of both hangars and thus this phase of the impending dispute would have been extinguished. However, plaintiff, as the owner of the Williams Hangar, in effect, merely offered to defendant the opportunity to remain therein at a monthly rental of $722,65, which it chose to accept “under protest” which, so far as the facts developed herein and the law applicable thereto is concerned, this was a useless legal gesture.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.