## MERRILL v. HARANG.
### No. 2151.

Court of Appeal of Louisiana. First Circuit.
Nov. 9, 1940.
Rehearing Denied Dec. 12, 1940.

Richard Kilbourne, of Clinton, for appellant.

W. T. Bennett, of Clinton, for appellee.

OTT, Judge.

On April 15, 1940, plaintiff and defendant entered into an agreement whereby the former agreed to construct for the latter

a levee and dam on his premises for an agreed price of $1,200. The work consisted of raising an old levee for some 550 feet by placing a quantity of dirt thereon to an elevation of three feet above the bottom of a designated spillway, to create and maintain a slope of one foot on three feet on one side of the levee and a slope of one foot on two feet on the other side, and to maintain a width of 15 feet on top; to add a fill of 2½ feet on a washed out portion of the old levee for a distance of 50 feet on either side of the center of the washout. (This latter part of the agreement was subsequently changed by a verbal agreement so that this extra 2½-foot fill would slope from the center in both directions for a distance of 75 feet.)

The plaintiff also agreed to cut out the material where the spillway was to be constructed and place this material in the new fill. He further agreed to construct another levee 220 feet in length with a 15-foot crown and one foot on two feet on one side and one foot on three feet on the other side in accordance with a sketch shown on the contract.

Plaintiff proceeded with the work and was paid the sum of $600 about May 8th and the work was tendered to defendant about that time as complete. The defendant desired to have the work checked by his engineer, which was done, and the plaintiff did some additional filling to comply, as he claims, with the requirements of this engineer in order to complete the job. After this additional work was done, the defendant made another payment of $100, stating that he would pay the balance in a few days. The balance was not paid, the defendant claiming that he found after making the last payment of $100 and after the plaintiff had moved his machinery off the premises that the work was not properly done and the job was not completed in accordance with the contract.

This suit is to recover for the balance of $500 plus an additional amount of $9.90 for removing 99 yards of gravel from the old levee for which he claims the defendant agreed to pay him the sum of ten cents per yard.

The defendant admits the contract and admits making the two payments above mentioned, but he claims in his original answer that the dam was so defectively constructed that it has washed so as to become practically worthless. In a supplemental answer, the defendant has outlined more in detail what he claims are the defects in the levee and dam and the failure of the plaintiff to complete the work according to the agreement. These alleged defects may be summarized as follows: Failure to build the levee to a sufficient height and width on the top; failure to build the slopes or sides out to the proper extensions at the foot of the levee, and his failure to fill in these slopes on the sides up to a sufficient grade; and the further failure to loosen up the dirt on top of the old levee before putting on the new dirt, thus causing the new dirt to wash off more easily. The defendant claims damages by way of reconvention in the sum of $500 caused by the washing of the levee and an additional $500 as the cost of completing the levee and dam according to the contract.

There was judgment in favor of plaintiff in the amount claimed. Nothing was said in the judgment about the reconventional demand, and the defendant concedes that this demand is no longer an issue in the case. The case is before the court on an appeal by the defendant.

As there seems to be considerable difference between the parties as to the law with reference to construction contracts regarding the burden of proof and the remedies of the parties when the owner resists payment on account of alleged defects in the work or because of a failure on the part of the contractor to complete the work according to the agreement, we will give what we understand to be the law on this subject before discussing the evidence offered by both parties in the case.

■ In building and construction contracts, where the owner admits the contract and the fixing of a price for the entire work and seeks to escape liability for the payment of all or part of the contract price on account of defects in the work, or a failure to complete the job according to the contract, the owner bears the burden of proving the defects and omissions on the part of the contractor in his execution of the work. Annan v. Woods, 158 La. 663, 104 So. 491; A. M. Blodgett Const. Co. v. Cheney Lbr. Co., Ltd., 129 La. 1057, 57 So. 369; Borne v. Hardin, 15 La.App. 286, 131 So. 472.

■ As a general rule, a person who sues to recover on a commutative contract must allege and prove that he has performed his part of the contract. C.C. art. 1913; McLemore v. Hemler, 4 La.App. 388. However, it is now well settled that a suit may be maintained on a construction or

building contract where the work has been delivered although the work be defective or unfinished, and the remedy of the defendant in such a case is for a reduction of the price agreed upon to the extent of the damages sustained by reason of the defective or incomplete performance of the contract. C.C. art. 2769; Cairy v. Randolph, 6 La.Ann. 202; Davidson v. McGrath, 5 La.App. 125; Reimann Construction Co., Inc., v. Upton, La.App., 178 So. 528.

■ A substantial compliance with a building contract is all that is required, and the owner cannot escape payment of the contract price because of minor and unimportant deviations from the contract, or because of the failure to complete the work in minor details. Dugue v. Levy, 114 La. 21, 37 So. 995; Peterson v. Peralta, 3 La.App. 516.

■ A careful examination of the evidence convinces us of the correctness of the findings of the trial judge that the defendant has failed to show by a preponderance of the evidence that the work was defective and not in substantial compliance with the agreement. On the contrary, we think that the plaintiff has shown a substantial compliance with the contract.

The principal evidence introduced by the defendant to support his defense and his own testimony consists of some pictures made of parts of the levee a few days after it was turned over to the defendant as completed and the drawings of sections of the levee made by a soil conservation engineer after the work was finished. These pictures show that a line drawn from the top of sections of the levee down the side or slope to the toe stakes at the bottom leaves a sink or depression on some of these slopes ranging from a few inches to almost three feet. The drawings of sections of the levee made by the soil conservation engineer show some depressions or sinks on the sides and slopes and on the top of the levee when measured by other lines which the engineer claims indicate how the levee should have been built under the contract. One of the pictures purports to show that a section of the levee was not built out at the bottom to the toe stake, indicating that the fill did not extend out a sufficient distance at the bottom.

Assuming that these pictures show this line drawn from proper stakes on the top and bottom of the levee, we can see a considerable depression in the slopes of the levee at these points. We can also see that at one point at least the bottom of the levee did not extend out for a sufficient distance. But the evidence is not clear as to the correct location of the stakes and points from which the lines were drawn. We can readily understand how in a levee the size and length of this one there could be depressions in the sides and on the top at certain places along the levee.

The plaintiff and two other witnesses who worked on the job testified that the crown of the levee was built up to full height and width and the slopes were built out and up to the grade required under the contract. In fact, plaintiff claims that in many parts the levee was built out beyond the toe stakes and the top and slopes were above the required height. The plaintiff is partly corroborated in this by one of the drawings of the dam (D–4) made by defendant's witness, the soil conservation engineer. On this drawing, one section of the dam is shown to have been built a few inches higher than required under this engineer's idea of what kind of dam should have been built under the contract.

There is some conflict in the testimony as to whether or not the dirt in the old levee was torn up before putting on the new dirt, but we think that the decided preponderance of the evidence shows that this was done. The men who actually did the work testified that the dirt and gravel on the old levee was torn up before the new dirt was put on the fill, and that the work was done in the usual and customary way.

If the drawings made by the soil conservation engineer as to how the levee should have been built had been the contract between the parties, it might be said that there was not a substantial compliance with the contract, but, as stated by the trial judge, "it must be borne in mind that the engineer's plan, as exhibited, did not form a part of the original contract."

The plaintiff has been building levees for more than twenty years, and it must be assumed that he knew what kind of levee and dam was contemplated, and as he, as well as two or three men working with him, testified that the work was done in the usual way and according to their understanding of the contract, we think their testimony is sufficient to overcome that of the defendant and the soil conservation engineer which might appear to the contrary. It is significant that the defendant was familiar with the manner in which the work was being done, and he made little, if any, com-

plaint as to the execution of the work until after plaintiff had gone back and repaired the deficiencies pointed out by defendant's engineer when he inspected the work the first time after it had been tendered by the plaintiff as finished. Nor was any complaint made until after plaintiff had moved his machinery off the job and after the defendant had promised to pay the balance on a certain date, which promise he failed to keep and then gave as a reason for not making the payment that the fill had washed and was not properly constructed.

We think there can be little doubt about the separate verbal agreement whereby plaintiff was to remove the gravel on the old levee for ten cents per yard, and that he did remove 99 yards of this gravel. The trial judge correctly allowed this item.

For the reasons assigned, the judgment is affirmed at the cost of the appellant.