Eugene J. Lillis, who is the owner of the Brandin Slate Company, of New Orleans, on September 19, 1944, entered into a written contract with the defendant, Dr. Charles M. Bannister, who was therein represented by his agent, Ed. Osbourn, a contractor of Bay St. Louis, Mississippi, whereby he undertook to install a No. 1 Spanish tile roof on both a residence and a bathhouse which the defendant contemplated erecting upon his property fronting on the Jordan River in Hancock County, Mississippi. It was subsequently mutually agreed that the part of the contract which applied to the roofing of the residential structure should be deleted therefrom, and the stipulation was made that the contract would be applicable only in so far as the roofing of the bathhouse was concerned. The parties fixed the price of this work at $403. Plaintiff's petition alleges that he performed his contract and that there is due him the price of the work, which *Page 878 
defendant has without reason refused to pay.
The execution of the contract was admitted by defendant, but he disclaims liability and resists the suit upon the ground that the work was defective and worthless, and had not been done in accordance wtih the terms of the contract. He further filed a demand in reconvention alleging that the work was so imperfect that the tiles were stripped from the roof. His claim is for $73.70, the alleged cost of removing the tiles plus other incidental expenses. The matter proceeded to trial on these issues and the lower court awarded plaintiff judgment in the amount prayed for, plus a fifteen per cent attorney's fee as provided for in the contract. The reconventional demand was dismissed. Defendant has appealed.
It was stipulated in the contract that the tiles to be placed upon the bathhouse roof were to be "factory cut", that is, they were to be manufactured so that they would fit the roof. Osbourn, who was the building contractor for defendant, in order that the tiles could be properly cut, submitted to plaintiff a sketch of the roof, which was sent by plaintiff to the tile manufacturer. In due course the slate company received the tiles from the factory and applied them to defendant's building.
Defendant contends that plaintiff failed to perform the work in accordance with the contract and the defects of which he complains may be summarized as follows: that the tiles were irregularly cut; that only one nail was used in each tile and was not completely driven into the roof, causing the tiles to hang loosely; that the roof leaked.
It is not disputed that some weeks after the completion of the work leaks developed in the roof. Upon being notified thereof, plaintiff dispatched Bermann, his foreman, and several workmen to correct that condition. It appears that Bermann removed and replaced some of the tiles, and he testified that this corrective work was sufficient to have eliminated any further possibility of leakage.
It is contended by defendant that notwithstanding plaintiff's effort, the roof continued to leak and that Osbourn brought this fact to plaintiff's attention. Osbourn testified that he made several complaints and that finally he addressed a letter to plaintiff calling upon him to remedy the defects within ten days, and advising plaintiff that if the roof was not corrected within that time he would have the tiles removed. Osbourn, when pressed regarding this purported letter, could produce no copy of it. Plaintiff and the members of his office force testified emphatically that they at no time received such letter from Osbourn. However, Osbourn did remove the tiles and stacked them beside the bathhouse. He then recovered the roof with asbestos shingles.
It is true that with the first rain some leaks appeared in the roof, but plaintiff, as has been stated, made an effort to correct the condition. It is not disputed that the sketch of the roof which was used by the factory when cutting the tiles did not show or contemplate any openings in the roof. The record shows, however, that without notice to plaintiff the defendant later changed the plan and ran a chimney and a vent pipe through the roof, and at the time plaintiff's workmen affixed the tiles the two openings had not been flashed with metal as is requisite in roofing work. It was not plaintiff's duty under the contract to flash the roof, and it appears that the openings had not been flashed up to the time that plaintiff started applying the tiles. Plaintiff and some of his witnesses testified that the leaks resulted from the lack of flashing to the two openings, and not because of any defect in applying the tiles.
Defendant complains that each of the tiles was affixed by a single nail, which caused them to hang loosely, and attributes the leaks to that fact. However, Julian J. Loeb, a disinterested roofing contractor, Louis Tyler, one of plaintiff's workmen who assisted in the installation of the roof, and plaintiff himself, all testified that only one nail is used to fasten Spanish tiles and that the nail, together with the weight of the other tiles, causes each tile to remain snugly in place. They testified that Spanish tiles, which are made of baked clay, are extremely brittle, and that if *Page 879 
more than one nail is used there is a likelihood that the tile will crack. They further stated that the nail should not be tightly driven into the tile, so that allowance is made for expansion and contraction resulting from temperature and atmospheric changes. The plaintiff testified that it is not unusual for defects to appear in a Spanish tile roof, and that ofttimes leaks occur with the first rain, but that they can be remedied with little difficulty. The defendant points to the fact that each tile contained two nail holes and claims that the plaintiff improperly installed the tiles by using but one nail. The testimony shows that two holes are made in each tile for the reason that if one of them should happen to be placed above a crack or weak part of the sheathing in the roof, the nail can be driven through the second hole.
[1, 2] The record as a whole convinces us that plaintiff substantially complied with his contract. The roof seems to have been installed in the usual and customary manner, and while there were some minor imperfections in it there is no doubt that they could have been corrected had plaintiff been given the proper opportunity. It was the duty of the defendant to have permitted plaintiff to correct the work, or to have sought a reduction of the price to an amount necessary to correct the work. Instead, the defendant chose to strip the tiles from the roof, and by having done so he cannot be successful in resisting liability for the contract price.
[3] It is well settled that a contractor may recover the value of work done by him, even though it be unfinished or defective, the remedy of the owner being a reduction of the price to an amount necessary to perfect or complete the work. Peterson v. Peralto, 3 La. App. 516; Art. 2769, R.C.C.; Cairy v. Randolph, 6 La. Ann. 202; Babst v. Peritz Yochim, Orleans No. 7548; W. Berns Bros. v. Reiss, 12 Or. App. 126; Cary v. Brown, La. App., 196 So. 579; Merill v. Harang, La. App., 198 So. 386.
In the case of Reimann Const. Co. v. Upton, La. App., 178 So. 528, 529, we said:
"Our brother below visited the premises and was of the opinion that there are defects in workmanship apparent to the naked eye which should be remedied. We do not doubt the correctness of his finding in this respect, inasmuch as he saw the premises, and therefore was in a much better position than we are to determine this fact. But, notwithstanding this, we are of the opinion that the judge erred in dismissing plaintiff's suit, for it is well settled in this state that a contractor may recover the value of work done by him even though it be unfinished or defective. In the case of Peterson v. Peralta, 3 La. App. 516, with Judge Claiborne as the organ of this court, we said: 'A contractor may recover the value of the work which has enured to the benefit of the owner, although the work be defective or unfinished, if a price has been agreed upon; the remedy of the owner is a reduction thereof to an amount necessary to perfect or complete the work according to contract.' * * *
"We also find that the evidence adduced reveals that the plaintiff has substantially performed the contract, although, as pointed out by the district judge, there are certain defects which should be remedied. For as much as there is no evidence contained in the record exhibiting the amount of damages suffered by the defendant by reason of plaintiff's failure to perform the contract in a manner consistent with the specifications, we are compelled, under the established jurisprudence, to grant plaintiff a judgment for the full contract price."
Counsel for defendant concedes that the jurisprudence is to the effect above stated, but contends that the principle has no application here because the work was so defective that no benefit whatever enured to the defendant. He makes the further contention that the rule should not apply for the reason that defendant's property is located in a remote section of Mississippi, and that it would have been most difficult for defendant to have secured a tile contractor to correct the conditions which he argues existed in the roof. There is no merit in these contentions.
The judgment appealed from is affirmed.
Affirmed. *Page 880