McBRIDE, Judge.
Defendant has appealed from a judgment in favor of plaintiff for $750. In this suit, plaintiff claims $900 as the amount due on a verbal contract by which he agreed to dig across a portion of the property of defendant known as Star Ranch, in St. Charles Parish, a ditch approximately 3000 feet long, 3% feet deep, with a width at the bottom of approximately 6 feet. The petition alleges that under the terms of the contract he was required to remove from the ditch only those stumps which he was able to remove with his own machinery. The petition specifically alleges that the defendant agreed that he would remove the stumps which required dynamite blasting at his own expense. Plaintiff alleges a compliance with his contract.
Defendant, in answer, sets forth the following defenses: that the ditch was not completed as per the contract, because it was not uniformly dug and did not measure 12 feet at the top and 6 feet in width at the bottom; that it contained approximately 25 stumps and numerous roots that plaintiff *810 should have removed, which defendant had removed at his own expense; that defendant paid on account to plaintiff the sum of $600.
The major question at issue is: Who was to remove the stumps from the ditch? While the petition alleges that plaintiff was to dig the ditch, in reality plaintiffs contract was for the redigging of an existing ditch, which ran from the Prairie Canal across a part of Star Ranch to a point designated as the “Pump House.” Defendant owned a boat having a draft of about 2 feet, and for the purpose of accommodating his boat he desired to have the old ditch enlarged. At the upper end of the ditch was to be a turn basin, so that the boat could be turned about. Preliminary to the confection of the oral agreement, the matter of the removal of the stumps was discussed by the parties. Plaintiff says Landry was given two prices, one of $900 and the other for $1,400. The offer of $900 was made in contemplation of plaintiff removing only the stumps which could be removed with his dragline and in consideration of Landry agreeing to himself remove all large stumps from the ditch which required blasting by dynamite, and the alternative price of $1,400 contemplated the removal of all stumps by plaintiff. Landry accepted the $900 bid, with the understanding that he was to have removed all large stumps.
Besides Poche and Landry, one of Po-che’s sons, Lance, was present when the agreement was made. Lance Poche’s testimony corroborates that of Sidney Poche in detail; he stated that he accompanied his father to Landry’s ranch and was present when the matter of redigging the old ditch was discussed. He claims that he measured the old ditch, and that his father told Landry how much the work would cost and gave Landry two prices, the first being $1,-400 for digging the ditch and removing all stumps, and the other price being $900, for which Poche would do the digging and remove only those stumps which could be taken from the ditch by means of the drag-line. He states that his father explained to Landry that he was not a licensed dynamite expert and could not “shoot” the stumps himself. Lance Poche says that Landry told his father, “ ‘Mr. Poche, I will take the stumps out. I’ll take the $900.00 contract.’ He told my daddy, ‘For $900.00 you have the job. Go ahead and start whenever you see fit.’ ”
On the other hand, it is Landry’s contention that Lance Poche, while present, was not in near proximity to Sidney Poche and Landry, and could not hear what was said by them. Defendant testified also that one James Moten was present during the entire conversation, and produced Moten as his witness. Moten’s testimony is not at all beneficial to defendant’s cause, for the witness stated that he was not present more than five minutes, and that he did not hear all that was said between Poche and Landry, because he departed from the scene before the conversation ended. It has not been shown to us that Lance Poche was not in a position to hear the terms which were agreed to between his father and Landry.
It will be seen that a question of veracity of the witnesses is involved. The trial court, in his written reasons for judgment, had this to say: “* * * from all the testimony, the Court believes that the true fact is that the contract did not require the plaintiff to remove such stumps as were so large as to require dynamiting, * *
We are unable to detect error in this finding of fact by the lower court. The judge saw and heard the parties testify and, of course, was in a superior position to weigh the testimony and appraise the veracity, and we see no reason to be in disagreement with his conclusion.
There is some contention as to whether the ditch was dug according to the specified measurements, and the evidence of the witnesses for one side is contrary to the testimony of the witnesses on the other side, which also leaves to be resolved a question of veracity. The trial judge was of the opinion that the ditch was cut to the correct specifications as to width and depth, except in some instances where it was not possible for Poche to meet the specifications because of the presence of large stumps which required dynamiting. Defendant particularly contends that the ditch *811 was to be 12 feet wide at the top. The evidence shows that the old ditch was of that width, and it necessarily follows that the new ditch must have been at least 12 feet wide at top. A careful sifting of all the evidence on the question whether the work was done according to specifications discloses no error in this finding of the trial judge.
It is also said by defendant that Poche left the ditch in, such a condition that water could not flow through it. We, like the trial judge, believe that in some instances it was impossible for plaintiff to cut the ditch exactly to specifications, because of the presence of large stumps which required dynamiting, which plaintiff was not bound to remove. These stumps caused some stoppage of the flow of the water when Landry attempted to drain the ditch.
In his answer, defendant alleged that Poche left in the ditch approximately 25 stumps and many roots, but his testimony is not in harmony with this averment of the answer. He testified at one point that there were stumps every 5, 8, or 10 feet apart “like an army of soldiers.” At another point, he declares that there were 50 or 60 stumps left, which statement he later disavowed with the assertion that he did not know how many stumps there were in the ditch. We cannot overlook the discrepancy between the testimony of the defendant and the recitals of his answer, nor the inconsistencies in the various statements made by him respecting the number of stumps left in the ditch by Poche.
Nevertheless, we feel sure that Poche failed to remove some stumps which he was bound under his contract to remove, and that these were removed by Landry along with the larger ones. Of course, the testimony of the plaintiff witnesses sharply conflicts with the statements made by the defense witnesses as to whether there were any small stumps in the ditch after Poche tendered the job to Landry. The trial judge thought some small stumps remained, and we believe this to be true. After Poche left, Landry had the ditch drained, and it .was only then that stumps which had been submerged were brought into view and their sizes determined. Our brother below felt that Poche had substantially met compliance with the terms of his undertaking, and with this finding we agree, for the incomplete work, that is to say, the failure to remove some stumps and in not cutting the ditch to specifications where stumps interfered, amounted only to a minor portion of the whole job. Landry was allowed a credit of $150 for the incompleted work, and judgment was rendered against him for $750. Unquestionably defendant is entitled to retain out of the price whatever it may have cost him to complete the contract, if such expense was caused by plaintiff not fully finishing the work which he had contracted to do.
Appellant complains that the figure of $150 was purely conjectural, and that there is no basis for the judge’s arrival at the said sum. We think the allowance was correct. Although not fully itemizing the cost, Landry testified that in having the ditch cleared he expended about $600. According to his testimony, one-third of the stumps which he had to have removed from the ditch himself were small in size, and we take it that these were ones which should have been taken from the ditch by Poche. We believe that Landry’s testimony furnishes an equitable criterion for determining the amount which is to be allowed him for having the job completed. If Landry’s total expenditure amounted to $600 for having the ditch cleared of stumps and mud, and one-third of the stumps were of small size and should have been removed by Poche, wé think $150 can be considered a fair allowance for removing the small stumps, as it stands to reason that the cost was less for removing the smaller stumps than for blasting out the larger ones. Under the circumstances, the allowance of $150 to Landry for completing the job does substantial justice to both parties.
 Appellant devoted a goodly portion of his brief and oral argument to the contention that the judgment was on a quantum meruit basis notwithstanding that well established jurisprudence forbids a recovery on a quantum meruit when a contract is declared upon. Counsel evidently *812 misunderstand the theory on which the judgment was rendered. The judgment is for the contract price less the sum of $150, which the trial judge believed Landry was entitled to retain as the cost of having the work completed. Our opinion is that the method used in calculating the amount of the judgment was the correct one, as the instant case comes within the principle set forth in a number of cases, to the effect that where a contractor substantially performs the work he contracts to do, even though it be defective or not finished^ the only remedy available to the defendant is for a reduction of the price to the extent of the damages sustained by reason of the defective performance of the contract, which is the amount necessary to perfect or complete the work. Esposito v. D’Assaro, La.App., 49 So.2d 356; Canulette & Son v. Clesi, La.App., 39 So.2d 853; Polizzi v. Thibodeaux, La.App., 35 So.2d 660; Brandin Slate Co. v. Bannister, La.App., 30 So.2d 877; Lillis v. Anderson, La.App., 21 So.2d 389; Merrill v. Harang, La.App., 198 So. 386; Reimann Construction Co. v. Upton, La.App., 170 So. 528.
As has been said, defendant in his answer sets up that he paid plaintiff $600 on account. We notice that the brief of appellant is silent on this defense, and counsel made no allusion to a $600 payment in verbal argument. The judge found as a matter of fact that no $600 payment was made and refused to allow credit therefor. A careful reading of the testimony adduced by both parties pertaining to the alleged payment convinces us that the most that can be said for defendant is that his evidence is not at all impressive. TO‘ prove payment, defendant offered, besides himself, two witnesses who claimed they were present at his place of business when the payment was supposed to have been made to plaintiff. They testified that on a Saturday night, after the ditch had been dug, Sidney Poche talked to defendant about the ditch contract, and that defendant obtained six one-hundred-dollar bills from his bartender and gave the money to Poche on account of the contract price. Poche and Elton Navarre denied what was said by the defendant and his witnesses. Their testimony is to the effect that Landry offered to pay $600 to Poche, but that the latter refused the offer, demanding that he be paid all of his money.
The defendant could produce no receipt for the payment. Landry is a business man, and it seems strange to us that if he had paid the $600' in cash to plaintiff as he contends he did, that he did not request a receipt therefor. Not alone that, but defendant maintains a banking account, and his check book was accessible in his business establishment on the night in question. It was testified to by defendant’s employee that most of his bills are paid by check, and it is hard to comprehend why, on the particular occasion in question, Landry would not have paid Poche the $500 by check, rather than, handing him $600 in cash with no receipt issued.
In view of our conclusions, it is not necessary to consider appellee’s answer to the appeal, wherein he prays that the judgment be increased to the amount sued for.
The judgment appealed from is affirmed.
Affirmed.
REGAN, J., takes no part.