73 So.2d 208 (1954)
SPICUZZA
v.
RANZINO.
No. 20212.
Court of Appeal of Louisiana, Orleans.
June 7, 1954.
Rehearing Denied June 30, 1954.
Writ of Certiorari Denied October 5, 1954.
Clement F. Perschall, New Orleans, for plaintiff-appellee.
Herman M. Schroeder, New Orleans, for defendant-appellant.
McBRIDE, Judge.
Plaintiff, a plumbing contractor, recovered judgment for $1,207.76 against defendant, which amount represents the balance of the price for which plaintiff had agreed to furnish and install certain plumbing work and fixtures in defendant's premises under a written contract. Defendant appeals. Appellant's sole contention is that the trial judge erred in not allowing a reduction in the price to cover the cost necessary in remedying and completing the work according to the contract. There is no dispute that the contract was substantially complied with by plaintiff.
The jurisprudence is well settled in this State that a contractor may recover the value of the work done by him if a price has been agreed upon even though it be unfinished or defective, the remedy of *209 the owner being a reduction of the contract price by an amount necessary to perfect or complete the work according to the contract. Peterson v. Peralta, 3 La.App. 516; Reimann Const. Co. v. Upton, La.App., 178 So. 528; Merrill v. Harang, La.App., 198 So. 386; Brandin Slate Co. v. Bannister, La.App., 30 So.2d 877.
By the contract dated December 5, 1951, plaintiff proposed to furnish and install certain enumerated fixtures to be furnished "in color" in upper rear bath, front bathroom first floor, and kitchen. Defendant's first complaint is that Spicuzza agreed to supply coral pink fixtures for the center bathroom on the first floor, but instead of installing the colored fixtures, white fixtures were furnished, the cost of which is $45 less than the colored ones. On the other hand, Spicuzza asserts that Ranzino had informed him at the time the contract was entered into that he could not afford colored fixtures in the center bath and that he was undecided whether he wanted the center bathroom equipped at all. It was not until after the contract had been signed that an agreement was reached respecting the work and fixtures in the center bath.
Because of defendant's irresolution regarding the center bath, plaintiff placed this addendum at the foot of the contract:
"P.S. If fixtures are desired in Center Bathroom on First Floor, please notify us within ten (10) days and there will be an additional cost of Two Hundred Forty Six Dollars and Four Cents ($246.04).
 M. O. S.(picuzza)."
On January 2, 1952, nearly a month after the contract Ranzino authorized the outfitting of the center bath as follows:
"The above mentioned fixtures in Center Bathroom on First Floor has been accepted by Owner, Jan. 2, 1952. Joseph Ranzino

(Signature of Agreement by owner)"
When the white bathtub, which ultimately went into the center bath, was uncrated, Anthony Ranzino, defendant's father, himself a tile contractor, was present and assisted in carrying the tub into the house. No complaint was made about the tub. Plaintiff testified that the price stipulated in the addendum, $246.04, correctly represents the price of white fixtures.
In view of the above, we can only reach the conclusion that defendant is not entitled to the claimed deduction of $45 as we cannot say that Spicuzza undertook to supply other than white fixtures in the center bathroom.
Defendant attempted to prove several alleged defects in plaintiff's work, such as the lack of vents over the heaters, a faucet in the kitchen which was not level, leaks in the pipes, a sink pipe which would not drain, and a lavatory out of line. It appears that Spicuzza did make some minor corrections, but he insists that none of the defects which defendant claims still exist were due to any faulty workmanship on his part. Defendant had another plumber do some work some months afterward at a cost of $154.56, but the work was toward the correction of things with which plaintiff had nothing to do. For instance, the lavatory was out of line. Spicuzza's testimony is that the lavatory was in perfect alignment and was correctly installed but was subsequently pulled out of line after he left the job, in a manner unknown to him. It was never proven that the stoppage of the sink line was caused through any fault on plaintiff's part. Insofar as the vents are concerned, the testimony is that work of this type is that of a tin worker and not that of a plumber. We feel sure that the vents were not contemplated in the contract between the parties.
There is in evidence copies of several written demands which plaintiff made upon defendant for the balance due and plaintiff asserts that he received no replies thereto or complaints about the work from defendant. It is shown that on June 19, 1952, the plumbing was inspected by the Sewerage & Water Board of New Orleans, which issued a proper certificate to defendant. It is also shown that subsequently the Mechanical Inspection Department of the City *210 of New Orleans made examination of the heaters and issued a certificate permitting the installation of a gas meter. On one occasion the attorney representing plaintiff and one of defendant's attorneys met at the premises in question to adjust any differences there might be between the parties and the only complaint registered against plaintiff's work was that a faucet in the kitchen was not level, which was promptly corrected by strapping the faucet.
The question of the veracity of the witnesses was resolved by the trial court in plaintiff's favor and we cannot say that he was wrong, and we perceive no manifest error in the judgment. Plaintiff is entitled to have his lien against defendant's property recognized.
Therefore, the judgment appealed from will be affirmed.
Affirmed.