JANVIER, Judge.
Monroe Ducore, a furnisher and installer of residential interior drapes, seeks to recover from Dr. Remy Gross a balance of $1,404 alleged to be due for furnishing and installing drapes in his residence at LaPlace in the Parish of St. John the Baptist.
Dr. Gross admits that he entered into a verbal contract with Ducore under which the latter was to furnish and install the fiberglass drapes, together with the necessary cornices and traverse rods, etc. He avers that the materials used were defective and that the installation was not properly done, and denying liability for any balance, seeks by reconventional demand to recover $2,600 which he paid to Ducore on account of the contract, the said amount having been paid in varying amounts during the course of the work and after completion of it.
There was judgment dismissing the suit of plaintiff, Monroe Ducore, and in favor of Dr. Gross as plaintiff in reconvention in the sum of $2,600. Ducore has appealed.
There is a slight disagreement as to the amount which was to have been paid under the verbal agreement of which there seem to have been two. Ducore says that the two contracts total $4,004, whereas defendant, Gross, says that the total contract price was $4,336.50. Since the defendant admits that the total amount of the contract was at least the amount claimed by plaintiff, this difference is of no importance except that defendant points to it as evidencing the fact that plaintiff was mistaken in this and therefore must have been mistaken in other matters as well. Plaintiff explains the difference by saying that there were two separate agreements, one of which was for the estimated price of $3,652.25 and the other for the estimated price of $684.25, and that when it was noted that the two totaled $4,336.50, he agreed to make the total price for both $4,004; in other words, to reduce his price by slightly more than $300.
In April, 1951, Dr. Gross employed Du-core to furnish the drapes and to install them. It was understood that they were not to be fabricated by Ducore, but that he would have them fabricated by someone else mentioned by him and that he would install them, furnishing the necessary cornices, traverse rods, etc. The work was completed during the spring or early summer of 1951, apparently in early June. Payments were made by Gross to Ducore as follows: May 8, 1951, $1,000; May 19, 1951, $1,000; May 31, 1951, $500; November 25, 1951, $100, totalling $2,600. Those payments were made by Mrs. Gross, but that fact is of no importance since Gross approved each of them when it was made.
So far as we can make certain from the record, no complaints were made during the progress of the work, and, in fact, no serious complaint was made until April, 1952, when Ducore made demand for the balance which he claimed was due him under the contract.
The drapes remained, as originally installed, until the time of the trial in the Dis *754 trict Court, which, was June 7, 1955. When plaintiff demanded the balance claimed to be due, defendant found that there were several defects in the materials and in the installation of the traverse rods. He then contended that the materials of which the drapes had been fabricated had faded in various places, that the flower patterns were not matched where the various pieces of goods were joined and that the traverse rods did not work properly.
During the late spring or summer of 1952, which was more than a year after the drapes had been installed, Mrs. Gross called Mr. Burford, an expert interior decorator of 40 years experience, and had him come to the residence and examine the drapes in an effort to determine whether the defects of which she complained could be eliminated and how serious these defects were.
Mr. Burford was called as a witness by plaintiff, Ducore. He stated that he had examined every drape in the residence and that he had found very little which would justify complaint. He made the following statement:
“A The only thing that I could find fault with — I can’t find any fault with the fabric; some of the work particularly the cornice, might be a little heavy. Otherwise, I can’t see anything wrong except that the job could have been made over with a little extra work.
“At the time I looked at it, the only thing I saw wrong with the job was that the cornices and traverse rods were not working properly. Otherwise, the job looked all right to me.”
He was asked what, in his opinion, would be the cost of correcting such defects as he found and he agreed that $200 or $225 “would cover it.”
Some of the drapes were offered in evidence and were exhibited to us, and counsel for plaintiff pointed out what he referred to as faded spots on the drapes. These spots very evidently were not the result of fading but plainly constituted stains.
It is possible that minor defects may have existed when the drapes were installed but it is made abundantly clear that the work was completed and that practically no complaints were made for more than a year after the installation had been completed and that one payment was made long after completion. It seems to be conceded that, except for the few drapes which were removed to be offered in evidence, all of the others are still in place and are still being used.
We cannot approve the action of defendant in making payments after the installation of the work and in retaining the drapes for many years if the serious defects of which he now complains actually existed when the work was completed.
The record makes it certain that the work was substantially completed and that therefore the burden rested upon Dr. Gross to make complaint of defects within a reasonable time and to show in detail just what those defects were. He was required to prove this with some semblance of certainty.
In Merrill v. Harang, 198 So. 386, 387, the Court of Appeal for the First Circuit said:
“In building and construction contracts, where the owner admits the contract and the fixing of a price for the entire work and seeks to escape liability for the payment of all or part of the contract price on account of defects in the work, or a failure to complete the job according to the contract, the owner bears the burden of proving the defects and omissions on the part of the contractor in his execution of the work. Annan v. Woods, 158 La. 663, 104 So. 491; A. M. Blodgett Const. Co. v. Cheney Lbr. Co., Ltd., 129 La. 1057, 57 So. 369; Borne v. Hardin, 15 La.App. 286, 131 So. 472.”
*755 Since the work was substantially complete, the burden rested upon Dr. Gross to prove just what would have been the cost of eliminating such defects as may have existed.
In Spicuzza v. Ranzino, La.App., 73 So.2d 208, in which a writ of certiorari was denied, we said:
The jurisprudence is well settled in this State that a contractor may recover the value of the work done by him if a price has been agreed upon even though it he unfinished or defective, the remedy of the owner being a reduction of the contract price by an amount necessary to perfect or complete the work according to the contract. Peterson v. Peralta, 3 La.App. 516; Reimann Const. Co. v. Upton, La. App., 178 So. 528; Merrill v. Harang, La.App., 198 So. 386; Brandin Slate Co. v. Bannister, La.App., 30 So.2d 877.”
Dr. Gross contends that he could not correct the defects because no one would accept that employment since all who were capable of remedying the defects did not want to undertake a job which would necessitate their later on taking part in a proceeding of this kind as witnesses. If the defects were of minor importance, as Mr. Burford says they were, we feel certain that somebody would have made the necessary corrections.
Since plaintiff has evidenced a willingness to reduce the amount due him by the amount Mr. Burford said would be required to repair the defects, such a reduction should, of course, be made.
We are not at all impressed by the fact that defendant has offered in evidence the bids of two other furnishers and installers of such drapes. He actually made this contract with plaintiff and is bound by it and what others might have charged for similar work is of no importance.
The judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of Monroe Ducore and against Dr. Remy Gross, in the sum of $1,179, with legal interest from judicial demand and all costs.
Reversed.