REGAN, Judge.
Plaintiff, John C. Engle, instituted this suit against the defendants, R. E. Hardouin, Sr., a general contractor, and Will Monroe, Sr., a subcontractor, endeavoring to recover $436.16, representing the amount plaintiff paid to raise the level of his garage and pave his driveway in order to provide adequate drainage, which work plaintiff asserts is worthless and must be completely redone since it did not achieve the result which the job was contracted to produce.
Defendants answered and asserted that plaintiff’s wife supervised the job; therefore, they were not liable since the installation was made according to her specifications and with her approval.
From a judgment awarding plaintiff $50 against Hardouin and dismissing the suit against Monroe, plaintiff has prosecuted this appeal. Defendant, Hardouin, answered and prayed that the judgment against him be set aside and the suit be dismissed at plaintiff’s cost.
While this appeal was pending, defendant Hardouin died and his heirs were sent into possession of his estate. On motion of the plaintiff, the decedent’s widow, Mrs. Marie Campo Hardouin, and heirs, Rudolph E. Hardouin, Jr., Michel J. Hardouin, Earl E. Hardouin, Ralph C. Hardouin, Marie E. Hardouin, wife of Joseph F. Toranto and Ruby C. Hardouin, wife of H. W. Flatt-mann, Sr., were made parties to this proceeding.
The record reveals that in April 1957, plaintiff entered into an oral contract with defendant, R. E. Hardouin, a general contractor, to raise the level of his garage floor four inches and to install a solid concrete slab driveway on plaintiff’s property to correct an inadequate drainage condition existing thereon. The garage floor was to be raised four inches; therefore, defendant told plaintiff it would be necessary for him to cut four inches off his garage door so that it would close. Plaintiff had the door cut and thereafter made a pencil mark on the side of the garage even with the bottom of the cut door to indicate the level to which the garage should be paved.
Defendant thereafter laid the forms for pouring the concrete and hired Will Monroe, a subcontractor, to pour the concrete. Monroe was given no instructions about how to proceed. When he poured the concrete in the garage, he did not pour it level, but sloped it as he asserted was customary when he worked for the defendant so that at the doorway of the garage, the concrete fell one inch below the mark which had been established. Consequently, the door, having been cut to fit a four-inch rise in the flooring, was one inch above the garage floor. This was later remedied by defendant who placed a one-inch strip across the bottom of the garage door.
With respect to the work performed in the driveway, defendant testified that before starting the job he advised Mrs. Engle to cut down a tree next to the driveway to insure against the concrete slab sinking or buckling where it passed over the tree roots. Mrs. Engle would not consent to this and defendant stated he attempted to prevent sinkage near the tree by placing several cement pilings under the slab at this point.
*512 The testimony with respect to complaints after the contract was completed differs. Plaintiff and his wife assert that they paid defendant in full on the condition that he would remedy the defective work. Between June and September 1957, they attempted several times to contact him, and although he inspected the work, it was not until September 1957 that he and Monroe conferred with the plaintiff. At that time Monroe admitted that he dropped the garage level without being instructed to do so, and he offered to .return and remedy the condition because, through his fault, it failed to meet the specifications contracted for. At that time plaintiff asked defendant to make an adjustment for the defective driveway, which not only failed to improve the drainage thereof, but caused it to be worse than it was before the paving had been laid. Plaintiff offered to settle the dispute if defendant would refund $50 to him but defendant refused to accept this offer.[1]
Defendant conversely asserts Mrs. Engle paid him on June 1, 1957, and at that time accepted the job. He denied receiving complaints .relative to the defectiveness of the work, but did recall that plaintiff said he would accept the job upon the payment of $50.
The installation was defective in several respects, according to Allison J. Borne, a paving contractor who testified as an expert. The purpose of improving the drainage was not accomplished by paving of the driveway because there was not enough fall, or slope, from the garage door to the front of the house. Borne stated that the slab sank two or three inches near the tree from the time it had been installed and he traced the sinkage to the pilings improperly poured by the defendant. In his opinion the pilings were not based on a solid strata, so rather than prevent sinkage, they ultimately accelerated the buckling process. He further observed a crack in the cement eight feet from the garage door and stated this was caused by defendant’s failure to place an expansion joint near the garage door. Another factor of faulty construction Borne asserted was the contractor’s failure to insert an expansion joint between the slab foundation of the house and the driveway. Borne estimated that it would cost $451 to remove and properly install a new driveway.
Adloe Orr, Jr., a civil engineer, testified that the driveway did not permit drainage from the rear to the front of the residence. Near the tree there is a “pocket” in the driveway, which causes water to accumulate, which in turn forms an ankle-deep pond when it rains. Orr, who contracts for pouring more than one half million dollars of paving jobs per year, stated the driveway was not functional for if it had been properly constructed, there should be no drainage to the .rear.
Counsel for plaintiff contends that the owner should recover the full amount he paid to the contractor, since he has derived absolutely no benefit from the defective work. He also insists that the judgment of the lower court should be amended so as to award expert fees of $50 each to Borne, the paving contractor, and Orr, the civil engineer. The judgment, plaintiff also asserts, should be rendered against both the general contractor and the subcontractor.
Defendant, in substance, maintains that no liability should attach to him since he followed the instructions of plaintiff’s wife in installing the driveway and garage.
The record is devoid of any substantial evidence that would tend to support the foregoing defense.
The damage for the breach of a paving contract is usually the cost of repairing the defective work, but this rule is applicable where the owner derives some *513 benefit from the defective construction.[2] In this case the work performed is worthless and must be completely redone, hence the plaintiff is entitled to be made whole and to claim the expense of removing' the defective work and the cost of repaving thereafter.[3]
Plaintiff, it will be recalled, sued to recover the amount he paid for the installation of the driveway and garage flooring, that is $436.16; however, the expert testimony established as a fact that it would cost plaintiff $451 to have the defective driveway removed and replaced, and that the driveway as laid could not be repaired so as to remedy the defects. While plaintiff, in conformity with the jurisprudence, would have been entitled to recover the damages he actually sustained, or $451, since he only prayed for $436.16, the judgment shall be amended to award that amount against the general contractor. The trial court properly dismissed plaintiff’s suit against defendant’s subcontractor, Monroe.
Turning our attention to the validity of the request for expert fees, we believe that the trial court erred in not assessing the defendant with the cost thereof. Orr, a civil engineer, appeared in the trial court and expressed his opinion relative to the inadequate slope of the driveway, while Borne, a paving contractor, ex-' pressed the opinion that the work was totally unfit for the purpose intended and predicated this conclusion upon very convincing reasons. Under the authority of LSA-R.S. 13 :3666,[4] these witnesses are entitled to expert fees and the request of plaintiff to fix these fees at $50 each is, we believe, fair and adequate.
For the foregoing reasons, the judgment appealed from is amended so as to increase the award of plaintiff against the heirs of the defendant, R. E. Hardouin, from $50 to $436.16, and to allow expert fees of $50 each to Adloe Orr, Jr., and Allison J. Borne, and as amended, the judgment in all other respects is affirmed.
Amended and affirmed.

. This probably accounts for the trial court’s judgment in favor of plaintiff and against tbe defendant for tbe sum of $50.

. Merrill v. Harang, La.App.1940, 198 So. 386; Sarver v. Barksdale, La.App.1946, 24 So.2d 649.

. Home Services v. Marvin, La.App.1948, 37 So.2d 413; Kozlowski v. Fowler, La.App. 1954, 71 So.2d 246; Ducore v. Gross, La.App.1959, 110 So.2d 752; Spicuzza v. Ranzino, La.App.1954, 73 So.2d 208.

.“Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required.”