426 So.2d 398 (1983)
James Fred PRICE and Delores Stanley Price, Plaintiffs-Appellants/Appellees,
v.
HUEY CHILDS BUILDER, INC., Defendant-Appellant/Appellee.
No. 15169-CA.
Court of Appeal of Louisiana, Second Circuit.
January 17, 1983.
Rehearing Denied February 24, 1983.
Frederic L. Miller, Shreveport, for plaintiffs-appellants/appellees.
Hiller & Weinstein by Richard Hiller, Shreveport, Campbell, Campbell & Johnson by John C. Campbell, Minden, for defendant-appellant/appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
The purchasers of a new home instituted an action against the builder of the home for defective workmanship in the construction of the house. The trial court granted the plaintiff-purchasers recovery against the defendant-contractor for some of the *399 damages sought by plaintiffs, and both plaintiffs and defendant have challenged the trial court's findings, perfecting the instant appeal. We amend, awarding plaintiffs certain additional sums, and as amended, affirm.
The parties to this appeal are plaintiff-appellants James Fred Price and his wife Delores, and defendant-appellant Huey Childs Builder, Inc., a Louisiana-based construction company owned and operated by Huey Childs.
Mr. Childs began constructing the brick home which is the subject of this appeal in August of 1979. There was no contract for the sale of the house at the inception of its construction, as Mr. Childs was building the home on a speculative basis. The house was in an unfinished statewith only a foundation and a wooden framewhen in September of 1979 James Price first developed an interest in purchasing it.
On December 13, with the house still in an unfinished state, plaintiff Price entered into a purchase agreement with defendant Childs to buy the house for the price of $90,800.00. The written purchase agreement was supplemented by detailed building specifications prepared by a civil engineer and acceded to and signed by Huey Childs. Mr. Childs orally agreed to complete the construction of the house for the Prices according to these specifications. In February of 1980, when the house was nearing completion but still under construction, Price and Childs orally agreed that certain specified modifications of the original plan would be implemented in order to make the house more suitable to its future owners, the Prices. This verbal agreement was never reduced to writing.
Price and Childs "closed" the sale of the newly constructed home on May 12, 1980, and jointly executed a cash sale deed which transferred the ownership of the new home to the Prices at a cost of $90,800.00. Both parties agreed, upon the trial, that at the time of the sale there was a clear understanding that Mr. Childs would implement certain improvements, repairs and refinements which were still needed in order to achieve the written building specifications. Upon the recommendation of a civil engineer retained by him, Childs returned, subsequent to closing of the sale, to underpin and stabilize the foundation beneath one wall of the newly purchased home. Mr. Childs failed to implement other needed improvements.
On March 30, 1981, the Prices brought suit against Childs, alleging that their new home was built on very expansive soils with a high plasticity index, and that the soils severely contracted and swelled in times of dry and wet weather. Plaintiffs contend that Childs did not respond to the condition of the soils with adequate soil testing, soil compaction or site preparation, and that he did not utilize sound construction techniques in building the foundation. As a result of these errors in construction, plaintiffs allege that cracks have developed in the interior and exterior walls of their house and in its concrete foundation, and that "parts of the house have separated."
In addition to the structural defects formally alleged by petition, plaintiffs presented demands for other items of damages, amending their pleadings through the introduction of unobjected-to-testimony. See LSA-C.C.P. Art. 1154. These other items of damage consist more particularly of the following deficiencies: defendant installed a small wet bar sink instead of a laundry tub as was called for by building specifications; defendant failed to furnish a mirror in the half bath; defendant installed bi-fold doors in the wet bar in an improper fashion; defendant placed mis-matched knobs and hardware on French doors; the commode installed was of the wrong color and its lid will not stay up; defendant failed to install trim-base mold and cove molding; defendant failed to replace and furnish hardware to several doors; and defendant neglected to install sheetrock in the den. Plaintiffs also presented demands for attorneys' fees and the reconstruction of a poorly erected chimney.
The trial court utilized a redhibition analysis in evaluating plaintiffs' claims and accordingly *400 dismissed those demands which were predicated upon defects that were apparent at the time of the sale. See LSA-C.C. Art. 2521. Pursuant to this statutory criteria, the trial court awarded plaintiffs $8,800.00 for the stabilization and underpinning of the house's foundation, as well as $447.50 in expert fees, and denied recovery for the remainder of plaintiffs' claims. The plaintiffs have appealed, assigning as error the court's failure to award recovery for other items of damages. The defendant has also appealed, challenging the trial court's decree that it is in anyway liable to the plaintiffs.
There can be little doubt, upon a careful examination of the record, that there is substance to plaintiffs' allegations that the performance of defendant Huey Childs in constructing plaintiffs' house was substandard. The crux of our task is to determine the availability of various statutory remedies, which are contingent upon the nature of plaintiffs' cause of action. The nature of plaintiffs' cause of action, in turn, is contingent upon our characterization of the contract by which the parties were mutually bound.
If the contract between the parties is characterized as a contract of sale, imposing upon defendant an obligation to give, plaintiffs' proper cause of action is in redhibition for vices in the thing sold. See LSA-C.C. Arts. 2520-2548. If the cause of action sounds in redhibition, furthermore, plaintiffs' remedies, as a vendee, are an avoidance of the sale and a return of the purchase price, LSA-C.C. Art. 2520, a repair of the purchased item by the vendor, LSA-C.C. Art. 2531, or a reduction of the purchase price. LSA-C.C. Arts. 2541-2544. A plaintiff in a redhibitory action may also obtain attorneys' fees and damages as legal remedies in cases where the seller knows and fails to declarethe vices of the thing he sells. LSA-C.C. Art. 2545. A plaintiff's remedies in redhibition, moreover, are subject to important limitations which are characteristic of all actions in redhibition: in order to constitute the basis for a valid cause of action, the vice or defect complained of must be non-apparent, undeclared by the seller, and present at the time of the sale. LSA-C.C. Arts. 2521, 2522, 2530.
If, on the other hand, the contract between the parties is characterized as a construction contract or a sale of services, imposing upon defendant an obligation to do, then different legal consequences result. "On the breach of any obligation to do, ... the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, ... or he may require the dissolution of the contract...." LSA-C.C. Art. 1926.[1] The Civil Code provides more specifically, with reference to construction contracts, that "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." LSA-C.C. Art. 2769.
We also acknowledge that as an alternative to strictly characterizing a contract as either a contract of sale or as a construction contract, a court might choose to characterize a given contract as a contractual hybrid. Thus such a contract could be characterized as a commixture which combines elements of a contract of salewhich imposes upon the obligor an obligation to give, with elements of a construction contractwhich imposes upon the obligor an obligation to do.[2] In such a case, a court could potentially fashion a sui generis combination of statutory *401 rights, coupling redhibition and breach of contract remedies, much as was done in Phillippe v. Browning Arms Company, 395 So.2d 310 (La.1980), wherein the Supreme Court coupled tort and redhibition remedies in compensating a plaintiff damaged by injuries arising from a single set of factual circumstances.
Lastly, a court could conceivably find that two self-subsistent contractsa contract of sale and a construction contract simultaneously regulate the relations of the parties.[3] In such a case, a court could simultaneously award the remedies peculiar to each of the co-existing contracts, while observing the tenet that a plaintiff is not to be compensated twice for any given item of damage.
The dilemma of characterization, in the context of sales and construction contracts, is one which has long troubled and beguiled civilian jurists and the Louisiana courts. See S. Litvinoff, Louisiana Civil Law TreatiseObligations, Book 2 §§ 157, 158 (1975); Levasseur, Sales, The Work of the Louisiana Appellate Courts for the 1977-1978 Term, 39 La.L.Rev. 705 (1979); Note, When is a Sale a Sale? 32 La.L.Rev. 446 (1972). "The problem of differentiating sales and construction contracts ... is a recurring one in the jurisprudence, and the answers given seldom lend themselves to uniformity..... Although the Civil Code clearly contemplates the distinction between these types of contracts, it defines the contract of sale only in the most general terms. Thus, the problem of categorizing a particular transaction has generally been left to the courts." 32 La.L.Rev., supra, at 446-447.
The judiciary has postulated several tests for determining whether a given contract is more appropriately characterized as a contract of sale, or a construction contract. The principle among these is the traditional "value test" in which the court determines whether the labor expended in constructing the item, or the materials incorporated therein, constitute "the principal value of the contract." 32 La.L.Rev., supra, at 449. Under such an economic evaluation, the contract is deemed to be a construction contract where the value of the builder's labor comprises the essential value of the contract, and a contract of sale where the value of physical materials forms the major element of the contract's value. Other tests formulated by the courts in characterizing contracts revolve around the intent of the parties. The basic question under this test is which component of the contract the services or the materialswas envisioned by the parties as the principal element and which was thought of as merely an accessory element. 32 La.L.Rev., supra, at 449-52.
We readily acknowledge that under the traditional value test, the contract between Price and Childs should be characterized as a sales contract, since the principal element of value in that contract is undoubtedly not labor, but materials. We furthermore observe that the civilian jurists have historically adopted the position that where the builderas opposed to the purchaserfurnishes the construction materials, the contract is one of sale. 39 La.L.Rev., supra, at 711. However, in faithful observance of our civilian heritage, we consider first not the jurisprudence or doctrinal writings, but the Civil Code itself, recognizing, as we do, that the "Law is a solemn expression of legislative will." LSA-C.C. Art. 1.
We believe that our problem is directly addressed by Book III, Title IX, Chapter 3, Section 3 of the Civil Code, Articles 2756-2777. Title IX of Book III concerns contracts "Of Lease." Chapter 3 of Title IX concerns, more specifically, contracts "Of the Letting Out of Labor or Industry." The even narrower focus of Section 3, Articles 2756-2777, is contracts "Of Constructing Buildings According to Plots, and Other Works by the Job, and of Furnishing Materials." It appears, from this scheme of classification and from the location of these articles in the code, that the redactors of the Civil Code envisioned that the construction of "buildings according to plots" is a *402 construction rather than a sales contract or in civilian terminology a lease of labor or industry.
The first article of Section 3 defines and articulates the scope and applicability of the section:
"To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price." LSA-C.C. Art. 2756.
Article 2757 further clarifies the applicability of Section 3, stating that "A person, who undertakes to make a work, may agree, either to furnish his work and industry alone, or to furnish also the materials necessary for such a work."
Having established that Section 3 governs contracts in which one party undertakes to construct a building for a specified price and furnishes either his work alone or both his labor and the necessary materials, the Civil Code delineates the legal consequences of this type of construction contract. More importantly, for our purposes, Section 3 specifically stipulates the appropriate remedy for the breach of a construction contract. As Article 2769 provides:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." (emphasis added).
The stipulated remedy, as provided by Articles 2769 and 2762,[4] is not redhibition but contractual damagesthe amount of the loss incurred by the obligee as a result of the obligor's non-performance. Therefore redhibitory rulesincluding the rule precluding recovery for an apparent defectare inapplicable here and the more general rules regarding the assessment of actual damages are instead operative.
We note parenthetically, however, that our decision to employ a "damages" rather than a "redhibition" analysis in determining recovery, runs counter to at least one scholar's conception of the intent of the French legislators who drafted the Napoleanic pre-cursor of Article 2757. As Professor Levasseur has astutely observed:
"The contradiction arising from the juxtaposition of the two articles of the French Civil Code would not have come into being had the Tribunat ratified the draft of the projet of article 1787 as it was presented. This draft included two additional sentences as follows:
A person who undertakes to make a work, may agree, either to furnish his work and industry alone, or to furnish also the materials necessary for such a work.
In the first situation we have a pure hiring of industry. In the second, it is the sale of a thing when it is made.
After some discussion in the Tribunat, the decision was made to drop `the last two subparagraphs of this article, as being of pure doctrine and as not having the nature of a legislative provision.'
It can be said, then, that the intent of the drafters of the French Civil Code was to consider a contract as a sale whenever the person who furnished his industry also furnished the materials for the work. A contract is a locatio operis, on the other hand, when the proprietor furnishes the materials to the person who is to furnish only his industry. Such was the opinion of the Romans, the great majority of the commentators, and the international law of the sale of corporeal movables." (emphasis original, footnotes omitted). 39 La.L.Rev., supra, at 710-11.
However, we decline to subordinate the clear language of the Louisiana Code to the uncodified intent of the jurists who fashioned the French pre-cursor of Article 2757. This stance is mandated by our own Civil Code which provides that "Law is a solemn *403 expression of legislative will," that "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit," and that the "cause which induced the Legislature to enact" a law is only to be considered where "its expressions are dubious." LSA-C.C. Arts. 1, 13, 18. The guiding principle, in short, is that the extant statutory language governs.
Articles 2756-2777 set out the rules for construction contracts in which the obligation to build is undertaken for a certain price. The Code expressly envisions that in these construction contracts, the builder may or may not undertake to provide his own materials.[5] But the Code does not differentiate between the consequences applicable when a builder furnishes his own materials, and the consequences applicable when a builder does not furnish his own materials. Article 2769 expressly delineates the remedy for a breach of this particular type of construction contract, and this statute does not predicate the availability of remedies upon the contingency of whether the contractor does or does not supply his own materials.
The Louisiana redactors did not desire to establish such a differentiation in remedies. In the absence of their attempt to make such a differentiation, we are not empowered, as a court, to supply such a differentiation.
The record clearly establishes that the defendant assumed an obligation to do which was the undertaking of "a building or a work for a certain stipulated price." LSA-C.C. Art. 2756. His obligation therefore satisfied the Civil Code's statutory definition of a contract to build "by a plot" or "by the job," and is accordingly governed by the codal rules germane to such contracts.
Our conclusion that this was a building contract, governed by LSA-C.C. Arts. 2756-2777, is not undermined by the fact that defendant and the Prices were party to both a purchase agreement and a cash sale deed. The denomination of these documents is not in and of itself dispositive in characterizing the contractual relations between the defendant and the Prices, and does not compel the conclusion that a contract of salerather than a construction contractwas operative here.
In our view, defendant entered into a verbal contract with the Prices to construct a house for $90,800.00 according to certain oral modifications and precise written specifications. This pre-existent obligation was clearly, in functional terms, a valid obligation to do: the codal requisites for the formation of a valid contractcause, object, consent and capacitywere satisfied, LSA-C.C. Art. 1779, and there is no codal requirement that obligations to do be reduced to writing.
Thus, defendant had an obligation, expressed in a verbal agreement. This construction contract was perfected before the execution of the written contract of sale transferred ownership of the house. We see no reason to ignore the rights incidental to the pre-existent obligation to do, merely because this first contractual obligation was followed by a subsequent obligation "to give" or transfer ownership. The defendant's obligation to transfer ownership of the house consummatedbut did not supercede his obligation to build it according to agreed upon specifications.
Since the contract which is operative here is a construction contract, Articles 2769 and 2762 mandate that a damages rather than a redhibition analysis is appropriate in assessing recovery. Because a redhibition analysis is inapplicable, the redhibition rule limiting recovery to nonapparent defects is equally inapplicable. We therefore amend the trial court's award to reflect our holding that the instant plaintiffs are not limited to redhibitory remedies and may thus recover for apparent defects. The proper standard of recovery in these instances, as *404 the courts have historically insisted, is the amount necessary to finish or rectify the work which the builder has imperfectly or only partially completed. LSA-C.C. Arts. 2762, 2769; Hayden v. Soule, 271 So.2d 264 (La.App. 4th Cir.1972); Poche v. Landry, 57 So.2d 808 (Orl.La.App.1952); Esposito v. D'Assaro, 49 So.2d 356 (Orl.La.App.1950); Canulette & Son v. Clesi, 39 So.2d 853 (Orl. La.App.1949); Polizzi v. Thibodeaux, 35 So.2d 660 (Orl.La.App.1948); Brandin Slate Co. v. Bannister, 30 So.2d 877 (Orl.La.App. 1947); Lillis v. Anderson, 21 So.2d 389 (Orl. La.App.1945); Merrill v. Harang, 198 So. 386 (La.App. 1st Cir.1940); Cary v. Brown, 196 So. 579 (Orl.La.App.1940); Reimann Construction Co. v. Upton, 178 So. 528 (Orl. La.App.1938).
We thus affirm the trial court's award of $8,800.00 for foundation stabilization and underpinning and $447.50 for expert fees. We also reinstate several claims which were rejected by the trial court. In accord with the jurisprudence and Articles 2762 and 2769, we assess the value of these claims for defective workmanship according to the cost which will be required to rectify and complete each imperfectly constructed household component. The testimony establishes that the following reconstruction costs will be necessitated by defendant's defective and incomplete workmanship and his failure to satisfy building specifications: reconstruction of a fireplace which is askew and aslant, supported by a wooden frame, and the bricks of which are coming loose due to disintegrating mortar$12,803.00; installation of a laundry tub$353.00; installation of a mirror in the half bath $125.00; installation of bi-fold doors in the wet bar$563.00; refitting and adjusting French doors$275.00; installing the specified hardware on the French doors $221.00; replacement of improperly installed commode$180.00; installation of cove and base mold in the kitchen and laundry room$451.00; reinstallation, caulking and refinishing of front door$375.00; installation of missing sheetrock in den and replacement on panelling$2,245.00. Reinstating these claims of plaintiffs which were rejected at the trial level, and adding them to the sum which were properly awarded, we find that defendant is indebted to the Prices in the amount of $26,838.50, which represents the costs that will be incurred in perfecting defendant's work and satisfying construction specifications.
We hold that where a builder undertakes by contract to construct a house for an obligee at a certain stipulated price, and later transfers the edifice he has agreed to construct by a contract of sale, the appropriate remedy is as per Articles 2756-2777 for the costs of rectifying all defects, omissions and deficiencies, rather than in redhibition.
Therefore the judgment of the trial court is amended and judgment is hereby rendered in favor of plaintiffs and against the defendant in the amount of $26,838.50, together with appropriate legal interest thereon, and for all costs of this litigation.
AMENDED, AFFIRMED AND RENDERED.
NOTES
[1] Insofar as the obligations of contracts extend to whatsoever is incidental to such contracts, "the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default." LSA-C.C. Art. 1930. Where the object of a contract is "any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived ...." LSA-C.C. Art. 1934.
[2] See Levasseur, Sales, The Work of the Louisiana Appellate Courts for the 1977-1978 Term, 39 La.L.Rev. 705, 709 (1979).
[3] See 39 La.L.Rev., supra, at 709.
[4] LSA-C.C. Art. 2762 provides that:

"If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be in wood or with frames filled with bricks."
[5] LSA-C.C. Art. 2757 provides that:

"A person, who undertakes to make a work, may agree, either to furnish his work and industry alone, or to furnish also the materials necessary for such a work."